**SCM SOCIETA COMMERCIALE S.P.A.**

**v.**

**INDUSTRIAL AND COMMERCIAL RESEARCH CORPORATION.**

**Civ. A. No. 3-75-0108-F.**

United States District Court, N. D. Texas, Dallas Division.

Aug. 27, 1976.

ORDER

ROBERT W. PORTER, District Judge.

Once again this Court has been called in to arbitrate the no show and no tell discovery games engaged in by the parties to this lawsuit. I should emphasize at the outset that this is not the only game in town. The fact pattern hereinafter recited has repeatedly surfaced in other litigation during my tenure on the bench. In fact, I have often thought that if the Federal Rules of Civil Procedure were in effect in 1492 the Indians undoubtedly would have made a motion to suppress Columbus' discovery.

This case commenced on January 27, 1975. Highlights of the discovery process are detailed below. The lowlights are contained in the first footnote.[1]

1. March 6, 1975 the Plaintiff filed its first set of interrogatories to the Defendant;

2. May 5, 1975 this Court entered an order granting the Defendant an extension of time to answer or object to Plaintiff's first set of interrogatories;

3. May 12, 1975 Defendant answered the Plaintiff's first set of interrogatories;

4. May 19, 1975 Plaintiff moved the Court to compel the Defendants to file responsive and complete answers to the first set of interrogatories, and to award the expenses of the motion;

5. June 26, 1975 a hearing was held on discovery and other matters;

6. July 10, 1975 the Defendant responded in opposition to the Plaintiff's motion to compel answers to interrogatories;

7. July 10, 1975 this Court entered an order granting the Plaintiff's motion to compel answer to its interrogatories;

8. August 1, 1975 the Defendant moved for an extension of time to answer interrogatories;

1. 1. On July 8, 1975 the Defendant promulgated its first set of interrogatories to the Plaintiff.

2. August 11, 1975 two notices to take depositions were filed.

3. September 12, 1975 Plaintiff filed a motion for a protective order relating to Defendant's first interrogatories.

4. September 12, 1975 Plaintiff filed answer and objections to Defendant's first interrogatories.

5. February 17, 1976 the Plaintiffs filed a notice to take depositions and filed a request for production of documents.

6. February 27, 1976 the Defendant moved the Court for an extension of time for taking oral depositions. This was later agreed to by the Plaintiffs.

7. May 10, 1976 the Defendant requested the production of documents.

8. May 13, 1976 the Defendant moved for a protective order relating to Plaintiff's questions propounded on deposition and request for production of documents.

9. June 9, 1976 the Plaintiff responded to Defendant's request for production of documents via a counter proposal.

10. June 9, 1976 Plaintiff moved for a protective order limiting discovery sought by Defendant.

11. June 25, 1976 Defendant answered the Plaintiff's Motion for a protective order by opposing the motion.

12. July 21, 1976 notice to take depositions was filed.

9. August 6, 1975 this Court entered an order granting the extension of time;

10. October 22, 1975 the Plaintiff communicated by letter that this Court's July 10, 1975 order had not been complied with;

11. February 2, 1976 the Plaintiff communicated by letter that Defendant had still not complied with the July 10, 1975 order;

12. This Court communicated to the Defendant that the interrogatories were to be answered within ten days;

13. May 17, 1976 the Plaintiff moved the Court to compel production of documents by Defendant, to compel answers to questions upon oral examination and to award Plaintiff's expenses;

14. June 25, 1976 the Defendant filed an answer in opposition to Plaintiff's motion to compel production of documents and to compel answers to questions upon oral examination and to award Plaintiff's expenses;

15. June 25, 1976 a lengthy, multi-hour hearing was conducted in chambers relating to discovery and other pre-trial matters;

16. July 1, 1976 I entered an order compelling discovery not later than July 31, 1976. In addition I partially granted the Plaintiff's motion for a protective order and required the Defendant to comply with my July 10, 1975 order no later than July 31, 1976. Also I permitted the Defendant to depose one Mr. Aurelli;

17. July 30, 1976 Defendants provided answers to Plaintiff's first set of interrogatories;

18. August 6, 1976 Plaintiff moved to impose sanctions upon Defendant and its attorney for failure to comply with discovery order;

19. August 6, 1976 I ordered Defendant to answer the motion by August 13, 1976;

20. August 13, 1976 I celebrated my 50th birthday in relative peace there being no discovery motion filed in connection with this case as Defendant had moved for and was granted a three day extension of time to answer;

21. August 16, 1976 Defendant filed various discovery related papers including a motion to quash Plaintiff's notice to take oral depositions, supplemental answers to Plaintiff's first set of interrogatories, a motion to reconsider my order of July 1, 1976 [2] and finally an answer in opposition to Plaintiff's Motion to impose sanctions;

22. August 18, 1976 the Plaintiff filed a letter brief responding to the Defendant's opposition to the Plaintiff's motion to impose sanctions;

23. August 26, 1976 another hearing—this one lasting an hour and a half was held in chambers.

The sad part of the foregoing chronology is that the only things accomplished in this time span are the production of incomplete answers to Plaintiff's first set of interrogatories, the impregnation of my file cabinets, the generation of legal fees and the fact that I have aged a year. Or is it ten?

The effect of these vexatious discovery tactics has been to substantially hamper the speedy, just and efficient determination of legal disputes in the federal courts. These kinds of practices cost litigants large amounts of money with the collateral effect of tilting the scales of justice in the direction of the party that can best afford to pay.

This case makes abundantly clear that the supposedly self-executing federal discovery rules are being abused. Apparently my prior policy, which included a reluctance to use Rule 37 sanctions, has not worked. Henceforth I will embark on a different course liberally using the full range of Rule 37 sanctions in appropriate circumstances.[3] My aim is to achieve maximum discovery with minimum involvement of this Court.

2. This was apparently on the theory that the best defense is a good offense.

3. If a party is forced to make a motion under Rule 37(a) for an order compelling discovery

There have been proposals advanced in furtherance of this aim,[4] but I believe that the best solution to this problem is to create a climate where the lawyers are induced to exercise self-restraint and act reasonably with respect to discovery matters and each other. I know full well as do most attorneys that discovery is often used vexatiously in an effort to obtain a settlement.[5] The case is settled in such instances for "nuisance value" and not on the relative strength of the legal rights and liabilities. I also take notice that many defendants instruct their attorneys to delay the litigation as much as possible thus making the plaintiff lose money and interest in his suit. This practice has the effect of deterring future litigation and is therefore desirable from a defense viewpoint. It is indefensible under the Federal Rules of Civil Procedure.

Henceforth, if I conclude that these practices are at the root of discovery problems or if an attorney is acting unreasonably in any other way, I will liberally impose Rule 37 sanctions.

Turning to the instant case I have several motions pending before me. The Defendant's motion to quash is denied except that the noticed deposition of Mr. Kenneth Nicholas shall take place at INCOR's place of business and he shall be required to make available all those documents he was asked to produce in the August 10, 1976 notice to take oral deposition. If he is not in possession of any or all of those documents and cannot obtain them he shall so state under oath.

The Defendant's motion to reconsider is also denied, except that my July 1, 1976 order is modified to the extent that Defendant shall be allowed to delete certain material relating to customers other than Plaintiff and to delete names of dealers that appear on the documents I have ordered to be produced. The documents shall be produced not later than September 2, 1976. The Plaintiff's motion for sanctions will now be considered.

Plaintiff contends that the Defendant has failed to obey this Court's July 1, 1976 order in several respects. First, I ordered that certain materials be provided for inspection and copying no later than July 31, 1976. Second, I directed that interrogatories were to be answered not later than July 31, 1976. These were the same interrogatories the

and I find that opposition to the motion was not substantially justified I will award costs. Put another way, if the party opposing discovery has acted unreasonably he will pay for it. Likewise if the party seeking discovery has his motion denied he runs the risk of having costs imposed absent a showing of substantial justification. *See* Rule 37(a)(4); *Wade v. Mississippi Co-op Extension Service*, 378 F.Supp. 1251 (N.D.Miss.1974) (expenses reserved and deducted from the award of attorney's fees). The 1970 amendment to Rule 37(a) was "intended to encourage wider use of award of expenses to discourage unnecessary recourse to the courts." 4A J. Moore, Federal Practice ¶ 37.02[10.–1] (2d ed. 1974).

Of course, Rule 37(b) provides for a wider range of sanctions than does Rule 37(a) where, as here, there has been failure to comply with a prior discovery order entered by the Court. I mean to emphasize that I will consider imposing sanctions to the extent permissible under both Rule 37(a) and Rule 37(b) as well as Rule 37(c) and 37(d).

4. *See e. g.*, Note, Standards for Imposition of Discovery Sanctions, 27 U.Maine L.Rev. 247 (1975).

5. This is often accomplished by use of what I consider an unprofessional and insulting practice. I am talking about canned or form interrogatories. I have seen defendants served with hundreds of irrelevant canned questions that have been cut and pasted together by a paralegal or other staff assistant. In many cases the numbers were not consecutive. If the plaintiff's lawyer is not willing to take the time to prepare questions to fit his case the defendant and his attorney should not be compelled to answer them. I do not mean that form questions are *per se* inappropriate. However, if used at all, the form or canned questions must be used selectively, must be germane to the case, must be prepared by a lawyer or under his direction, must be a reasonable number given the nature of the case, and must be consecutively numbered. If I am convinced that a lawyer has breached this standard or has in any way acted unreasonably I will deny the discovery and/or impose sanctions.

Defendant was previously ordered by the Court to answer way back on July 10, 1975. On July 30, 1976 the Defendant filed some answers to Plaintiff's interrogatories. Plaintiff in its August 6, 1976 motion alleged that these answers were incomplete and evasive. The Plaintiff specifically complained of evasive and incomplete answers to Interrogatory Nos. 41 and 45. The Defendant supplemented its answer to Interrogatory No. 41 after the motion for sanctions was filed. The Plaintiff contends that even this supplemental response is incomplete and evasive.

On August 16, 1976 the Defendant responded to the Plaintiff's motion for sanctions in a four part memorandum. Part I contends that the Plaintiff misled this Court in its motion for sanctions. It seems to me, however, that the Plaintiff accurately stated the facts with respect to the interrogatories I ordered answered and the invoices I ordered produced. Furthermore, Plaintiff's attorney executed a sworn statement on August 18, 1976 stating he had not received the following:

(a) All invoices and other records related to the purchase or sale by INCOR since January 1, 1970, of equipment manufactured or distributed by SCM. The records of INCOR sales to dealers and distributors of INCOR shall be produced but may be produced in a manner that will not record portions of such documents related to INCOR's sales of machines not manufactured or distributed by SCM. Such records shall cover the period of lost profits claimed by INCOR;

(b) INCOR sales data for the period from January 1, 1970, through January 1, 1975, including the number of sales of each type of machine sold by INCOR during that period, the cost of sales related to each type of machine sold by INCOR, including cost of machinery, office overhead, machine expenses and other pertinent information necessary to support the entries related to profits on INCOR corporate federal income tax returns for each year since 1970.

(c) Financial statements of INCOR for the period from January 1, 1970, through the period of lost profits claimed by INCOR.

Part II of the Defendant's memo charges Plaintiff with "a continuous and steady course of harassment of the Defendant." While the Court is aware that counsel for both parties to this case are thorough, persistent and tenacious, the short answer to Defendant's contention is that much of the Plaintiff's so-called harassment has become necessary because of the Defendant's failure to comply with this Court's orders.

Part III argues that the answers to the *interrogatories are complete and unevasive.* My opinion is to the contrary. My July 1, 1976 order required my July 10, 1975 order to be complied with *in total.* My July 10, 1975 order required questions 41 and 45 to be answered without qualification. For the third time I am ordering that these questions be answered completely. The Defendant must comply by September 2, 1976. He must likewise comply with other aspects of my July 1, 1976 order by that date, September 2, 1976.

Part IV reasserts the position taken in Part III. I likewise reassert my position.

The Plaintiff is certainly entitled to some sanctions. He asks the Court to strike the Defendant's counterclaim for damages. He further requests that INCOR and its attorneys be required to pay SCM's reasonable expenses, including attorney fees, caused by Defendant's failure to comply with the Court's order.

■ While I will not grant the Plaintiff's Motion in its entirety, I have decided to grant the motion insofar as it relates to costs. I will deny the motion to strike Defendant's counterclaims. As a result, the Plaintiff shall be paid the sum of $500.00 to be taxed as costs against the Defendant.

I am always reluctant to dismiss a party's substantive claims as sanction for dilatory tactics. I am mindful of the fact that often these tactics are undertaken at the behest of the party. The defense lawyer is thus

put in a difficult position between an intractable client and a diligent Plaintiff's lawyer intent on protecting *his* client's interests. That may well be the case here, but I nevertheless will not dismiss these counterclaims at this time. Costs, however, will be allowed as above set forth.

I further order that all discovery in this case shall be completed within the time frame set forth in my July 1, 1976 order. I will remain receptive to motions for sanctions as a remedy for dilatory tactics between now and then. I am hopeful that this course of action will result in the completion of discovery without further dispute. If a further dispute *does* develop and finds its way to this Court the parties will quickly discover that their games might well be over.

It is so ORDERED.