**ASSOCIATED RADIO SERVICE COMPANY and Associated Radio Company**

v.

**PAGE AIRWAYS, INC., et al.**

**No. CA3–7838–F.**

United States District Court,
D. Texas.

Feb. 10, 1977.

---

ORDER AND MEMORANDUM OPINION

ROBERT W. PORTER, District Judge.

The nature of this controversy was the subject of a previous memorandum order of

this Court[1] and will not be repeated here. All that need be said at this juncture is that this is an antitrust suit in every sense of the phrase. The Plaintiffs' allegations of antitrust have spilled over to the discovery process where nobody trusts anybody. The details of these discovery problems are set out below.

At first glance many of the discovery disputes presented to the Court appeared frivolous. However, in light of the voluminous discovery and equally voluminous objections to discovery, I ordered all counsel to attend a discovery conference. My order provided that counsel were to attempt informal resolution of their discovery disputes and, upon completion of the conference, to submit a Discovery Conference Report to the Court. That report was to be filed within a specified period of time after completion of the conference and was to recite which attorneys attended the conference and the amount of time spent at the conference. It was also to disclose the matters that had been informally resolved, those matters that might yet be informally resolved and finally, those matters incapable of informal resolution. The parties were then directed to provide the court with briefs within a specified period of time on those discovery matters, the attorneys were unable to resolve.

The discovery conference report was not filed within the time frame ordered by the Court. When inquiry was made the Court was informed that counsel could not agree about what was resolved at the conference and that drafts of the conference report were circulating among the attorneys. I granted an extension of time to file the Conference Report and one was filed within the extended time period. Then another— completely different—conference report was filed. Plaintiffs had apparently filed their version of the report prompting the Defendants to counter with their own report. The two reports differed in format and disagreed as to what was still in dispute and furthermore presented two differ-

ent versions of what was resolved at the conference. Briefs were filed but, of course, as there was no agreement on what was disagreed, different points were briefed.

I had ordered the discovery conference in part because I believed that it would permit discovery with the least amount of judicial involvement. It was also designed to obviate the necessity for a hearing. In addition, I ordered the conference because I believed it would permit the maximum amount of discovery at the minimum cost in legal fees. I have been and continue to be concerned about the large amount of legal fees devoured by the discovery process.

## I. DISCOVERY RULINGS

When the two conference reports and briefs were filed I attempted to rule on the discovery issues raised therein but felt that a hearing was essential in light of the disparity between the two conference report drafts. Accordingly, a hearing was held on January 17, 1977 in court. With respect to the discovery matters raised at the hearing, by the motions and the two conference report drafts I reach the following decisions:

(A) Plaintiffs may discover current information from Defendants up to April 1, 1977. This discovery may be directed at (1) Plaintiffs' yardstick method of damage computation and; (2) Plaintiffs' allegations of conspiracy which might be shown inferentially from current documentation. This ruling should not be construed as a statement on whether Plaintiffs may submit their yardstick measure to the jury. That issue will be faced at a later date. Finally, I find that the Defendants' refusal to produce current information was substantially justified as it was based on a prior order of this Court. Thus, Defendants' refusal to produce is not susceptible to sanctions pursuant to Rule 37(a).

(B) At our last hearing all attorneys expressed varying degrees of shock about Plaintiffs' failure to answer written interrogatories and to produce documents ordered to be produced. This discovery was

1. *Associated Radio Service Co. v. Page Airways, Inc.*, 414 F.Supp. 1088 (N.D.Tex.1976).

ordered pursuant to a July 30, 1976 letter order from the Court. Plaintiffs have agreed to produce the documents and apologize for an oversight which led to their failure to produce. In addition, they have agreed to supplement their answers to interrogatories. I would make one additional comment concerning expert testimony. Both sides are under a continuing obligation to supplement their answers regarding their expert witnesses. My usual sanction for failure to comply with Rule 26(b)(4)(A)(i) is to refuse to allow the expert witness to testify.

(C) The Plaintiffs have requested the production of tax returns for Defendants, Chapin, Juston and Hamilton for all tax periods ending after January 1, 1971. The request is denied. *See Federal Savings & Loan Ins. Corp. v. Krueger,* 55 F.R.D. 512 (N.D.Ill.1972).

(D) The Plaintiffs' request number 35 seeks information concerning political contributions made on behalf of the several defendants. The Plaintiffs contend that this information could lead to "the discovery of evidence showing Defendants' predisposition, and continuing attempts, to bribe and otherwise wrongfully influence government officials . . .". Defendants argue that this request could not be more deliberately objectionable. Without passing on the degree of objectionableness I can see how this information might have some slight relevance to this case but the relevance is so tenuous that I will deny the request.

(E) Plaintiffs' request numbered 37 and 38 are granted. This information should be provided by the Defendants prior to the deadline for discovery. See § IV of this order.

(F) With respect to Plaintiffs' request No. 40 I agree with the Defendants that the request is too vague. It does, however, request relevant information and should be redrafted by the Plaintiffs, if they choose to

pursue this information, with more particularity. With respect to the dispute regarding "affiliated, related or subsidiary corporations" I hereby adopt the "agreement" reached by the discovery conference and reflected in the Defendants' Draft at pages 7–8.

(G) The Plaintiffs request production of documents pertaining to interior outfitting asserting that these activities are closely related to avionics installation. I agree with this contention and this request is granted.

(H) Finally, I reach the question of whether the personnel files of officers and directors of Defendants and their affiliated corporations from 1967 to date are relevant to the circumstances of Plaintiffs' second amended complaint. This dispute concerns Plaintiffs' request number 35. I believe that this information could be relevant to this suit and will order production subject to Paragraph F of this order concerning affiliated companies and also subject to the April 1, 1977 cutoff date for discovery of current information.

## II. FUTURE DISCOVERY DISPUTES

I believe that Paragraph I. of this opinion resolves all of the outstanding discovery disputes in this case. There may be something that I have missed in attempting to swing back and forth between the two versions of the Discovery Conference Report and, if so, that dispute should be submitted in accordance with the terms of this section.

Henceforth, the Clerk of the Court and all parties to this lawsuit are directed to submit discovery problems of any kind to United States Magistrate Patrick H. Mulloy for disposition. 28 U.S.C.A. § 636(b)(1)(A) (Dec. Supp.1976).[2]

## III. DISCOVERY SANCTIONS

In August of 1976 I announced a new policy with regard to my position on discovery sanctions. *SCM Societa Commerc-*

---

**2.** The Northern District of Texas does not have a local rule permitting the United States Magistrates for this district to handle discovery dis-

putes. Until the recent amendment to 28 U.S.C. § 636 the absence of a local rule raised doubts as to whether discovery matters could

*iale SPA v. Industrial and Commercial Research Corp.*, 72 F.R.D. 110 (N.D.Tex.1976). I confessed my prior reluctance to impose sanctions pursuant to Rule 37 but declared my intentions to henceforth use the full range of sanctions in light of recurring discovery disputes. That pattern has reappeared in this case. I reemphasize that these discovery matters have become a serious problem impinging on the court's time and the client's pocketbook.

The *SCM* opinion was a first step to remedying this problem. This case represents the second step. A hearing has been held on the question of sanctions and affidavits have been filed. After considering all of the evidence I have decided to impose sanctions on both sides.[3]

There are three discovery transgressions where sanctions are appropriate in this case. The first concerns the failure to comply with my order concerning the discovery conference and the filing of a discovery conference report. This order was designed to permit or provide discovery and thus the expenses to the parties caused by the failure to comply with this order may be awarded pursuant to Rule 37(b)(2). The rule provides that the expenses may be awarded against the party, the attorney advising the party or both. The expenses that may be recovered include attorneys fees.

The failure to produce a conference report may be laid at the feet of the attorneys and not the parties to this suit.[4] Accordingly, I have decided to award expenses caused by this failure to comply with my order only against the attorneys: There are two areas where expenses were caused by the failure to submit a conference report. First, a hearing—involving approximately four hours of time for each of five attorneys—was caused, unnecessarily, by the failure to comply with my order. Second, I find that 50 hours of attorneys time at $60.00 per hour, was spent in preparation for the hearing and in unjustified objections to the various proposals for a conference report. In addition, I find that costs in the amount of $840.00 were incurred in preparation for the hearing and in unjustified objections to the various proposals for a conference report.

At the hearing two attorneys appeared on behalf of Plaintiffs and I have set their reasonable rate of compensation at $60.00 per hour and $50.00 per hour respectively. Three attorneys appearing for the Defendants actively pursued discovery matters. I have set their reasonable rate of compensation at $60.00 per hour.

As a result of these computations I ORDER that the law firm representing Defendants Page Airways and Page Gulfstream tender forthwith to the Plaintiff Associated Radio Service a check in the amount of $1,180.00 and to Plaintiff Associated Radio Co. a check in the amount of $1,180.00, for a total of $2,360.00. The law firm representing Defendants Page Airways and Page Gulfstream or any individual of that law firm shall not be indemnified or compensated in any other way by its clients or any party to this suit for the amount of this assessment.

I further ORDER that the Dallas law firm representing Plaintiffs shall pay to the Defendant Page Airways the sum of $1,020.00, to Defendant Page Gulfstream

---

be referred. The amendment has, however, cleared up this controversy and a District Judge now clearly has power to refer discovery matters in a case pending before him even absent a local rule.

3. The problem frequently faced with the imposition of sanctions is that in many complicated discovery matters both sides are somewhat at fault and, if expenses are awarded, the sanctions imposed on both sides tend to cancel each other out. Thus, the sanction is ineffective as a deterrent for future unjustified discovery tactics. The approach I have taken in this case, however, cures this problem.

4. Certainly one remedy for the attorneys' failure to comply with my order would have been to issue an order to show cause why they should not be held in contempt. I have purposely chosen not to pursue this course as I am only interested in moving this three and a half year old litigation to a reasonably timely conclusion. Cf. *In re Sutter*, 543 F.2d 1030 (2d Cir. 1976) (Attorney fined $1,500.00 for delaying start of trial).

the sum of $1,020.00, to Defendant Douglas Juston the sum of $200.00, to Defendant Ross Chapin the sum of $200.00 and to Defendant Edwin Hamilton the sum of $200.00, for a total of $2.640.00. The Plaintiffs' Dallas law firm or any individual of that law firm shall not be indemnified or in any other way compensated by its clients or any party to this suit for the amount of this assessment.

The second discovery dispute susceptible to sanctions concerns the Plaintiffs' failure to comply with a prior discovery order of this court in two respects: (a) failure to completely answer interrogatories and; (b) failure to produce documents. I believe that the Defendants' expense caused by these failures should be assessed against the Plaintiffs (but not their attorneys) in the amount of $500.00 attorneys' fees and $150.00 costs. *See, e. g. Cromaglass Corp. v. Ferm*, 344 F.Supp. 924 (M.D.Pa.1972). The Plaintiffs shall pay to Defendants the amount of $650.00 to be shared in equal proportions by the five Defendants.

The last item ripe for sanctions concerns Defendants' position with respect to Item IE. I find the Defendants' position to be without substantial justification. I therefore ORDER the award of attorneys' fees and costs in the amount of $500.00 to be assessed against the Defendants but not their attorneys. The Defendants shall pay the amount of $500.00 to the Plaintiffs to be shared equally. Of this amount the Defendant Page Airways shall be liable for $220.00, the Defendant Page Gulfstream shall be liable for $220.00 and Defendants Juston, Chapin and Hamilton shall be liable for $20.00 apiece.

### III. DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

On June 10, 1976, this Court entered a Memorandum Order detailing the nature of this controversy and discussing Pick-Barth and progeny, the meaning of *per se* and the Noerr-Pennington doctrine. One section of that opinion has come back to haunt me— "Motions Held in Abeyance". In that part I required the Plaintiffs to outline each element of their Sherman Act Section Two claim with a resume of the facts which will purportedly prove each element of that claim. In addition I required the Plaintiffs to replead their claim under Section One of the Sherman Act. Both efforts have been successful enough to pass a motion to dismiss for failure to state a claim or in the alternative, summary judgment, and thus the Defendants' motions as to the Section One and Section Two claims are overruled.

I also held in abeyance a motion to dismiss based on Plaintiffs' alleged lack of standing, pending purported development by the Fifth Circuit of the law in this area. These Circuit opinions have now been filed and I am ready to rule on the standing issue. The Defendants' motion to dismiss for lack of standing is overruled. I cannot say at this point that "the plaintiffs can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This overruling of the Defendants' motion does not mean I am free from doubt on the standing question. On the contrary, I have very serious reservations about the Plaintiffs' standing. Thus, the Defendants should raise this question again at the close of the Plaintiffs' evidence at which time I will reconsider the matter on a motion for directed verdict.

### IV. TRIAL SETTING AND DEADLINES

After careful consideration I have determined that this case should be tried on June 6, 1977 and the case has therefore been specially set on my jury docket for that week. All discovery must be completed not

later than April 25, 1977. All pretrial motions, except motions in limine which must be filed one week prior to trial, must be filed not later than May 6, 1977.

This trial setting will be postponed only in the event of an extreme emergency. Such emergency would arise if, while on a pleasure cruise in the South Pacific, Plaintiffs' attorneys and Defendants' attorneys were stranded on a deserted island, became enamored of one another and decided to pursue the trials of Robinson Crusoe rather than the trial of this case.

The Pretrial Order must be filed by May 9, 1977. A preliminary pretrial conference has been set for March 10, 1977, at 9:00 a. m. in court.

It is so ORDERED.