Katherine **ROBBINS**, Plaintiff,

v.

**CAMDEN CITY BOARD OF EDUCATION**, Defendant.

**Civ. A. No. 82–2350(c).**

United States District Court,
D. New Jersey.

Jan. 22, 1985.

---

Ronald J. Freeman, Freeman, Zeller & Bryant, Cherry Hill, N.J., for plaintiff.

M. Allan Vogelson, Supnick, Mitnick, Vogelson, Josselson & DePersia, Haddonfield, N.J., for defendant.

## OPINION

JEROME B. SIMANDLE, United States Magistrate:

This opinion will dispose of defendant's pending motion for an order limiting the plaintiff's interrogatories in the above action which alleges age and race discrimination in employment.

When the motion was initially filed, defendant's objections were directed to the interrogatories as a whole and based upon claims that the interrogatories are excessive, unduly burdensome, designed to harass, and go beyond the scope of proper discovery. The court has received supplemental submissions on behalf of both parties which address more specifically some of the 259 interrogatories propounded by plaintiff. As a result, the focus of defend-

ant's motion has shifted somewhat and the court must consider the propriety of the individual interrogatories, to the extent possible, rather than treating them as a whole. Furthermore, defendant has raised the additional issue in his supplemental submissions of whether the interrogatories are unnecessarily repetitive and duplicative. Because plaintiff has had an opportunity to respond, the court will consider this additional allegation in disposing of defendant's motion.

Before proceeding to a determination on each of plaintiff's interrogatories, a brief review of the allegations of the pleadings is necessary to place the court's rulings in their proper context.

## PART I

### I. *Factual Contentions*

The complaint in this action asserts claims under the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 2000e *et seq.*, and under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* According to the complaint, plaintiff was employed by defendant as a school teacher from September, 1974 through June, 1977. When plaintiff was not offered a contract for the 1977–1978 school year, she filed a charge against defendant with the Equal Employment Opportunity Commission [hereinafter EEOC]. Plaintiff received a Notice of Right to Sue from the EEOC on April 30, 1982, and subsequently commenced this litigation by filing a complaint on July 22, 1982 alleging discrimination on the basis of race and age.

The allegations of the complaint are as follows:

(1) Plaintiff claims that she was discriminated against by defendant with respect to the terms and conditions of her employment and tenure rights based upon her race;

(2) Plaintiff contends that she was discriminated against with respect to hiring, discharge, and other terms, conditions, and privileges of employment based upon her age;

(3) Plaintiff claims that she was discriminated against, particularly in her last year of employment because defendant knew that it was her tenure year. This discrimination allegedly was in the form of harassment, criticism, and reprimands because of her race and age; and

(4) Plaintiff contends that defendant unlawfully refused to offer plaintiff a contract for the 1977–1978 school year.

Plaintiff seeks injunctive relief prohibiting defendant from continuing its discriminatory practices, reinstatement to her former position with back pay and tenure, compensatory and punitive damages, and costs and attorneys' fees of this litigation. In addition, plaintiff asks that the court retain jurisdiction over this matter to assure defendant's compliance if the litigation is decided favorably to plaintiff.

Defendant's answer, in addition to denying any discrimination against plaintiff, claims that plaintiff was evaluated by defendant's agents, servants, or employees, and that it was on the basis of these evaluations that plaintiff was not rehired. Defendant also alleges that all administrative procedures were observed and that the decision not to rehire plaintiff was a reasonable exercise of defendant's discretion.

### II. *Scope of Discovery*

The benchmark in determining whether matters are discoverable is Fed.R.Civ.P. 26(b)(1). Rule 26(b)(1) provides in relevant part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears

reasonably calculated to lead to the discovery of admissible evidence.

■ Although the scope of discovery prescribed by Fed.R.Civ.P. 26(b)(1) is a broad one, the rule has recently been amended to address perceived problems of over-discovery and abuses of the discovery process. As amended, the rule authorizes greater judicial involvement in setting discovery limits to, *inter alia,* reduce repetitious or burdensome discovery. Courts are cautioned, however, "not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case" (Advisory Committee Notes to the 1983 Amendments, Rule 26). The imposition of unnecessary limitations on discovery is especially to be avoided in Title VII cases. *Trevino v. Celanese Corp.,* 701 F.2d 397, 405 (5th Cir.1983).

■ Despite the generally held view that liberal discovery should be permitted in actions alleging unlawful discrimination, the scope of discovery is not without limits. The responses sought must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party. *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 343 (10th Cir.1975); *Haykel v. G.F.L. Furniture Leasing Co.,* 76 F.R.D. 386, 391 (N.D.Ga.1976). Discovery should be tailored to the issues involved in the particular case. *Hardrick v. Legal Services Corp.,* 96 F.R.D. 617, 618 (D.D.C.1983). Also, in the present action, plaintiff does not purport to represent a class of persons similarly discriminated against on the basis of race and age, nor has she alleged that defendant has engaged in a widespread pattern or practice of discrimination on the basis of race and age. Rather, she has presented a fairly individualized claim of discrimination based upon race and age. Nonetheless, the applicable discovery parameters must be broader than the specific, individualized facts upon which her claims are based because of the nature of the proofs required to demonstrate unlawful discrimination, which may often be indirect or circumstantial.

■ The methods of proving a prima facie case of race or age discrimination are similar. Claims of race-based employment discrimination under Title VII may be pressed in two ways. First, an individual may claim that she has been the victim of a facially neutral practice or policy which has a *disparate impact* upon a protected class. This type of case is often proved through statistical evidence demonstrating that the protected class is grossly under-represented in the employment setting. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Second, the Title VII plaintiff may attempt to prove that she received *disparate treatment* based upon her race. Unlike the disparate impact case, plaintiff must prove discriminatory motive. *General Building Contractors Association Inc. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977). A plaintiff may make out a prima facie case of discriminatory motive if plaintiff can demonstrate (1) that she is a member of a protected class; (2) that she was qualified for the position held or applied for; (3) that, despite her qualifications, her employment was terminated or she was rejected for the position applied for; and (4) that after termination or rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications, or that plaintiff was as qualified as the person ultimately hired to fill the position. *See McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973).

■ If plaintiff can make this prima facie showing, the burden of going forward shifts to defendant to articulate some legitimate, non-discriminatory reason for the employment decision. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the defendant has come forward with such a reason, plaintiff has the opportunity to demonstrate that the stated reason was a pretext. *Furnco Construc-*

*tion Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). It is in the demonstration of pretext that statistics become relevant in the disparate treatment context. *Sweat v. Miller Brewing Co.,* 708 F.2d 655, 658 (11th Cir.1983); *Whack v. Peabody & Wind Engineering Co.,* 595 F.2d 190 (3d Cir.1979); *Burns v. Thiokol Chemical Corp.,* 483 F.2d 300, 306 (5th Cir.1973).

■ The allegations of plaintiff's complaint with respect to race discrimination, while stated in general terms, appear to raise only a claim of disparate treatment. The pleading points to no facially neutral employment policy or practice by defendant which has a disproportionate adverse impact upon black employees. *Pickney v. County of Northampton,* 512 F.Supp. 989, 996 (E.D.Pa.1981). Since the disparate impact theory of recovery does not apply, discovery in this matter must be tailored to meet plaintiff's reasonable needs in the disparate treatment setting. Thus, discovery would be disallowed as to testing, which is only relevant in a disparate impact case, and it may be appropriate to place parameters on the discovery of statistical and other information. For example, courts have imposed limitations as to time period, *Hardrick v. Legal Services Corp.,* 96 F.R.D. 617, 619 (D.D.C.1983), the employing facility or work unit of the plaintiff, *EEOC v. Packard Electric Division,* 569 F.2d 315, 318 (5th Cir.1978), *McClain v. Mack Trucks,* 85 F.R.D. 53, 60 (E.D.Pa.1979), the job category to which plaintiff belongs, *Hardrick, supra,* at 619, the type of action by which plaintiff was aggrieved, *e.g.,* hiring, promotion, discharge, etc., *McClain, supra,* at 62, and the type of discrimination alleged, *e.g.* race, age or sex, *Johnson v. Southern Railway Co.,* 19 EPD ¶ 9076 at 6645 (N.D.Ga.1977).

■ Insofar as plaintiff's complaint raises age discrimination claims, plaintiff must be prepared to meet a possible affirmative defense that age is a bona fide occupational qualification [hereinafter BFOQ]. *See Trans World Airlines, Inc. v. Thurston,* —— U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Marshall v. Westinghouse Electric Corp.,* 576 F.2d 588, 591 (5th Cir.1978); 29 U.S.C. § 623(f). Although defendant has not used this specific language in its responsive pleadings, the BFOQ defense may fairly be said to have been raised by defendant's claim that the failure to grant tenure to plaintiff was a reasonable exercise of discretion. Therefore, discovery in this matter must be sufficiently broad to enable plaintiff to resist such a defense unless counsel stipulate that the BFOQ defense will play no part in this litigation. With this background in mind, the court will address the specific interrogatories at issue.

### A. *Repetitive or Duplicative Interrogatories*

■ Defendant's allegation that many of the propounded interrogatories are repetitive or duplicative is a difficult issue to resolve. None of the interrogatories submitted are exactly identical, but many are so similar that they would adduce identical information.[1]

Much of the duplication is a result of the plaintiff's use of multiple sets of pattern interrogatories, presumably derived from other discrimination cases, asking generally the same questions in different ways. Although the use of well-conceived uniform interrogatories has been approved and even compelled in certain automobile negligence cases in the Superior Court of New Jersey,[2] the use of multiple pattern interrogatories

---

**1.** For example, interrogatory number 123 asks defendant to identify each position for which the plaintiff applied or was considered. Interrogatory number 167 asks defendant to identify each position for which plaintiff applied and to state with respect to each; the title and description of the job, the job qualifications, and the number of "blacks and whites" currently holding the position. Obviously, interrogatory 167

is more wide-ranging than interrogatory number 123. By the same token, interrogatory number 167 has rendered interrogatory number 123 superfluous. Therefore, there is no reason that defendant should be required to answer both.

**2.** *See* N.J.Civ. Practice R. 4:17–3(c) & App. II.

in more complex litigation can lead to the confusion and duplication found here. This is especially true where the propounding counsel has made little effort to tailor the interrogatories to the facts and circumstances of this case. The indiscriminate use of pattern interrogatories has been criticized if not reasonably related to the case and if unduly numerous as a result, *see SCM Societa Commerciale S.P.A. v. Industrial & Commercial Research Corp.*, 72 F.R.D. 110 (N.D.Tex.1976), and 8 Wright & Miller, *Federal Practice and Procedure* § 2168 at 518. Sanctions may be appropriate in more aggravated cases where it is "obvious that they had all been produced by some word-processing machine's memory of prior litigation." *Blank v. Ronson Corp.*, 97 F.R.D. 744, 745 (S.D. N.Y.1983). In the present case, the interrogatories may be cumulative and redundant, but they are not so impaired as to require the striking of these interrogatories altogether. The procedure outlined below shall be followed instead.

 After examining the individual interrogatories for repetitiveness, this court finds that defendant need not provide answers to the interrogatories listed below under the heading "Duplicative Questions Stricken."[3] The interrogatories listed in the left-hand column are not necessarily to be answered by defendant. Their appropriateness will be considered within each of the subsections which follow.

| Questions Not Stricken | Duplicative Questions Stricken |
|---|---|
| 17 | 213, 214 |
| 49 | 10, 11, 132, 175, 205, 215, 218 |
| 53-60 | 153, 154, 155 |
| 70 | 230 |
| 71 | 231 |
| 95 | 116 |
| 96 | 117 |
| 130 | 108 |
| 131 | 109 |
| 151 | 171 |
| 152 | 172 |
| 158 | 120, 146, 170 |
| 167 | 123 |
| 176 | 177, 202, 221–223, 235, 245, 246 |
| 178 | 168, 207, 216 |

**3.** This is not an exhaustive list of duplicative questions. In compiling this list, this court adopted a narrow view of what constituted duplications. There still remain interrogatories, or subparts of interrogatories, which are argu-

| Questions Not Stricken | Duplicative Questions Stricken |
|---|---|
| 179 | 169, 204, 208, 217 |
| 186 | 188 |
| 187 | 189 |
| 200 | 203, 232 |
| 201 | 206, 233 |
| 209 | 224, 225 |
| 210–212 | 16, 229 |
| 228 | 133 |
| 247 | 251 |
| 248 | 252 |

 Further, defendant contends that interrogatory numbers 7–39 are identical to the interrogatories propounded in the EEOC proceedings, to which defendant has already provided answers. However, as plaintiff has convincingly pointed out, the defendant answered the EEOC interrogatories in January of 1978. Almost six years have passed since that time. Therefore, the court orders defendant to serve supplemental answers to these interrogatories in accordance with this opinion or a certified statement to the effect that the answers provided in the 1978 EEOC proceeding have not changed and are still valid.

3. *Interrogatory Numbers 106, 107, 138–141, 184–185, 219 and 220 .*

These interrogatories seek information concerning the type of tests which are administered by the defendant as a means of evaluating a job application or which plaintiff was required to take.

In a disparate treatment case, as the court finds this case to be, such a line of inquiry is irrelevant, 42 U.S.C. § 2000e–2(b). Accordingly, the defendant shall not be required to provide answers to these interrogatories.

C. *Interrogatory Numbers 1–6, 40–49, 128–131, 134–137, 142, 143, 167, 173, 174, 176, 178–183, 186, 189, 190–207, 209–212, 226, 227*

The above interrogatories relate directly to the allegations raised in plaintiff's complaint. They inquire specifically into plain-

ably duplicative of other questions. The defendant shall retain the right to answer a question it deems to be duplicative by making reference to its response to another question.

tiff's job performance, evaluations, promotions, and the like, sometimes by means of contention interrogatories.

■ While these interrogatories, for the most part, seek relevant information, certain of them are overbroad or irrelevant to the allegations of plaintiff's complaint. For example, interrogatory number 40 asks when defendant first became aware of plaintiff's allegation of sex and race discrimination. The court has found nothing in the pleadings to indicate that plaintiff alleges sex discrimination. This litigation is strictly limited to race and age discrimination charges. Therefore, that part of interrogatory number 40 which concerns an allegation of sex-based discrimination is irrelevant and need not be answered. Likewise, interrogatory numbers 192–195 seek information on whether defendant contends plaintiff did not meet height or weight requirements or financial criteria for the job. I find no allegations in plaintiff's complaint which could support the need for these inquiries. Defendant should use these examples, as well as the criteria established in Part II of this opinion, as guidelines in answering the plaintiff's interrogatories concerning the allegations of her complaint.

■ In addition, two of these interrogatories are premature. Interrogatory numbers 43 and 45 seek the identification of defendant's trial witnesses. Although plaintiff is clearly entitled to know the identity of persons having knowledge of the facts pertaining to the incident at issue, 4 J. Moore, *Federal Practice* ¶ 26.57[1] (2d ed. 1984), the same is not true of the identity of *trial* witnesses. In this district, such information is required as part of the Joint Final Pre-Trial Order prepared by the parties. Thus, interrogatory numbers 43 and 45 are premature and need not be answered.

D. *Interrogatory Numbers 85–94*

■ These interrogatories seek information relating to other charges of discrimination which may have been raised against defendant by its employees in the past. As a general proposition, such questions are relevant. Discrimination on the basis of race is by definition class discrimination and the existence of a pattern of racial discrimination in a job category may well justify an inference that the practices complained of were motivated by racial factors. *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir.1975); *Kohn v. Royall Koegel & Wells*, 496 F.2d 1094 (2d Cir.1974); *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355 (6th Cir.1969).

■ In this case, however, plaintiff's interrogatories are overbroad and impose an undue burden on defendant. These questions contain no limitations as to time, type of action complained of (hiring, transfer, discharge, denial of tenure, etc.), or type of discrimination alleged (sex, race, age, etc.). Plaintiff will be permitted to propound new interrogatories concerning prior complaints of discrimination in keeping with the parameters set forth in Part II of this opinion.[4]

E. *Interrogatory Numbers 53–60, 79, 80, 121, 122, 158, 159, 160, 228, 255*

These interrogatories seek general information about the job categories of persons in defendant's employ, the identification of certain of defendant's employees, including certain characteristics, and general statistical information on the age and racial breakdown of defendant's employees. For example, interrogatory number 121 seeks the identity of employees who have been laid off or discharged since 1975, including information on their sex, age, race, national origin and religion.

The relevance of statistical data in a disparate treatment Title VII case has been clearly established. In *McDonnell-Doug-*

---

4. Defendant has objected to these interrogatories solely on the basis of overbreadth and burden. This court makes no judgment at this time as to the relevance of each and every question regarding prior complaints received by defendant. Upon plaintiff's resubmission of such questions, defendant shall respond in full or provide specific objections as to relevance.

*las Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court expressly noted the relevance of statistical data to prove that the employer's stated reason for the termination of plaintiff's employment was in fact a pretext. As the court stated:

> Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment; petitioner's reaction, if any, to respondent's legitimate civil rights activities; and petitioner's general policy and practice with respect to minority employment. *On the latter point, statistics as to petitioner's employment policy and practice may be helpful* to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks.

411 U.S. at 804–805, 93 S.Ct. at 1825–1826 (emphasis added).

In *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court reiterated its prior determination on the relevance of statistical data by observing that "[o]ur cases make it unmistakably clear that '[s]tatistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue." 431 U.S. at 339, 97 S.Ct. at 1856 [citations omitted].

■ While the plaintiff's request for statistical information is proper as a general matter, the court recognizes that such requests must be reasonably limited in scope in accordance with Fed.R.Civ.P. 26(b)(1), *Mazus v. Department of Transportation,* 629 F.2d 870, 875 (3d Cir.1980), and tied to the allegations of plaintiff's complaint.

■ A brief review of the interrogatories set forth in this section reveals that the statistical data sought exceed the acceptable scope of discoverability. For example, many of these interrogatories seek statistical information which extend far beyond the subject matter of the allegations of discrimination contained in plaintiff's complaint. For example, interrogatory number 37 requests the race *and sex* of all teachers who obtained tenure since 1974 at McGraw Elementary School, even though plaintiff has not alleged sex discrimination in her complaint. Another question, interrogatory number 56, requests, among other information, the hourly rates of pay of certain employees. Nothing in plaintiff's complaint alleges discrimination in pay, making such information requests irrelevant to the issues in this case. This group of interrogatories is also overbroad because it contains no limitations as to time, job category, and type of practice at issue. For all of those reasons, defendant will not be required to answer these interrogatories in their current form. Plaintiff will be permitted to resubmit interrogatories seeking statistical information in accordance with the guidelines set forth in Part II of this opinion.

F. *Interrogatory Numbers 68–78, 81–84, 95–105, 110–115, 118, 119, 124–127, 144, 145, 147–152, 156, 157, 161–166, 234, 236–244, 247–250, 253, 254, 256–259*

■ These interrogatories seek information concerning defendant's employment policies, formal and informal, those individuals employed by defendant with responsibility for implementing such policies, and the administrative practices and procedures used by the defendant to carry out such policies.

The court finds that, in general, such information is relevant to this case and is thus discoverable. Some of the information sought will enable plaintiff to identify persons responsible for implementing defendant's policies, whom plaintiff may then wish to depose. Other questions seek information which may support plaintiff's allegations that defendant discriminated against her in the terms and conditions of her employment (an allegation which is asserted very broadly in plaintiff's complaint). Still other questions may lead to

evidence that will aid plaintiff in meeting her burden of demonstrating that defendant's stated reason for its tenure decision is pretextual. For example, it would be probative if defendant selectively enforced its policies and procedures governing tenure decisions.

■ On the other hand, some of the interrogatories in this group clearly exceed the scope of plaintiff's allegations. For example, a large segment of this category covers questions concerning defendant's policies and practices regarding recruitment of minority teachers and the filling of job vacancies. Plaintiff does not allege any discrimination in initial hiring, nor would such allegations be germane to this litigation, since she was hired by defendant. Although the denial of tenure may arguably be classified as a decision not to "permanently hire" a teacher, it is distinguishable from a decision on initial hiring. Any questions as to policies or procedures governing initial hiring are irrelevant to plaintiff's case.[5]

■ In addition, there are other questions in this group which are irrelevant and overburdensome. For example, interrogatory number 69, in seeking information about individuals responsible for developing certain policies, requests the sex, national origin and religion of these individuals. This inquiry clearly exceeds the scope of discoverability in this disparate treatment case.

Defendant will not at this time be required to answer any of the interrogatories in this section. Plaintiff will be permitted to resubmit questions relating to defendant's policies, practices and procedures, in accordance with the parameters set forth in Part II of this opinion.

G. *Interrogatory Numbers 50–52, 61–67*

These interrogatories seek the production of various documents which are al-

legedly in the defendant's possession. The production of documents is governed by Fed.R.Civ.P. 34, which provides that requests for the production of documents, "shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity."

Many of plaintiff's requests are specific in nature and comply with Rule 34. However, some are too broad and impose an undue burden on defendant.

■ Interrogatory number 66, for example, seeks the production of all documents which defendant has submitted to any agency of the United States Government which contains a statistical breakdown of race of defendant's work force. No particular agency is identified and no relevant time period is specified. Likewise, interrogatory numbers 51 and 67 seek the production of similar documents submitted to various New Jersey agencies. These requests also fail to specify a relevant time period and, as to interrogatory number 67, particular agencies. Until such time as these requests are more narrowly focused, defendant will not be required to respond.

■ Interrogatory number 63 provides a further illustration as to the ambiguity inherent in many of plaintiff's interrogatories. Interrogatory number 63 seeks the production of all documents that "refer to or relate to" plaintiff. A literal reading of interrogatory number 63 would require the defendant to provide a copy of every document in its possession, since all of these documents could conceivably "refer or relate" to plaintiff's employment. Such a request is too broad and ambiguous to meet the "reasonable particularity" standard of Rule 34.

As to the remaining requests for documents, the court will note that defendant has made no particularized objections, rely-

---

**5.** Hiring statistics and information with regard to teachers hired in 1977–78 (the year in which plaintiff was denied tenure) would be relevant, however, to the issues of whether the employers continued to seek applications from persons of plaintiff's qualifications, or whether plaintiff was as qualified as the person ultimately hired to fill the position. *See McDonnell-Douglas Corp. v. Green, supra,* 411 U.S. at 803, 93 S.Ct. at 1824, and discussion in Part II(B)(3), below.

ing solely on its broad contention of irrelevance, overbreadth and undue burden. In the absence of specific objections, defendant will be compelled to respond to the remainder of plaintiff's requests for documents; however, defendant's right to object with particularity as to a specific request is preserved.

## PART II

### A. *Summary*

The disposition of this motion has been made extremely difficult by the manner in which counsel for both parties have presented it to the court. On the one hand, plaintiff, after propounding an extraordinary number of interrogatories, has made no efforts to withdraw even the clearly duplicative and irrelevant questions. On the other hand, defendant has supported its motion for a protective order with little more than a blanket challenge to the propounded interrogatories on the basis of undue burden. This minimal effort by the parties to present focused issues to the court has required that the court devote an inordinate amount of time to resolving this discovery dispute. Given the excessive number of interrogatories, I was at first inclined to grant defendant's motion in its entirety and require plaintiff to resubmit a more tailored set of interrogatories. However, given defendant's position of refusing to answer even the clearly relevant questions and its failure to meet its burden of demonstrating the irrelevance of other questions or the undue burden they would impose on defendant, I have conducted a more in-depth analysis of the interrogatories. I conclude as follows:

(1) that defendant has carried its burden of showing the duplicative nature of certain interrogatories, and this group of questions need not be answered (See Part I, Subpart A);

(2) that defendant shall be required to respond to interrogatory numbers 7–39 (excluding duplicative questions 10, 11 and 16), either by updating the information previously provided or by certifying that no update is required (See Part I, Subpart A);

(3) that defendant need not answer questions relating to testing, which are clearly irrelevant to this disparate treatment case (See Part I, Subpart B);

(4) that defendant has not met its burden with respect to questions clearly relevant to the allegations of plaintiff's complaint, and these questions must be answered within the guidelines set below, within thirty days of the date of this opinion (See Part I, Subpart C);

(5) that defendant will be required to respond to document production requests 50, 52, 61, 62, 64 and 65 within thirty days of the date of this opinion (See Part I, Subpart G);

(6) that defendant need not answer the remaining interrogatories, due either to irrelevance or to the undue burden caused by the excessive number propounded, but plaintiff may resubmit a more reasonable number, in accordance with the guidelines outlined below.

The number of questions remaining, after eliminating those which need not be answered at all and those which must be answered immediately, amounts to 112. But when subparts are taken into account, the number of remaining questions reaches almost 300. Even in a Title VII case, this is clearly an excessive number and not in keeping with the proportionality requirement of Fed.R.Civ.P. 26(b)(1). When plaintiff resubmits her interrogatories, she shall be limited to propounding no more than 75 interrogatories, *including* subparts. In so doing, plaintiff shall keep within the parameters set forth below.

### B. *Parameters Governing Permissible Scope of Plaintiff's Interrogatories*

#### (1) *Type of Discrimination Alleged*

The most basic consideration in setting parameters on the scope of plaintiff's interrogatories is that they must be relevant to the allegations of plaintiff's complaint. In her complaint, plaintiff has alleged that she was discriminated against on the basis of race and age. Therefore,

there is no relevance in information that would support charges of discrimination based on sex, religion, national origin or any other basis. Plaintiff violated this basic concept numerous times in her original set of interrogatories. The plaintiff's recast interrogatories will be required to be limited to race and age discrimination.

### (2) *Job Category*

■ In this case, it is also reasonable to impose constraints on discovering information on all of the job categories within defendant's employ. The plaintiff was employed by defendant exclusively as a teacher. Yet a large number of plaintiff's interrogatories, particularly those seeking statistical information, would require defendant to disclose extensive information on all of the job categories of persons it employs. Plaintiff has failed to demonstrate the relevance of information on job categories other than teachers. In the absence of any such justification, plaintiff will be restricted to seeking information only as to the category of teachers within defendant's employ.

### (3) *Type of Action at Issue*

■ The major allegation of plaintiff's complaint is that she was denied tenure on the basis of her race or age. Plaintiff also alleges that she was discriminated against in the terms and conditions of her employment. The last allegation is phrased very broadly, with allusions to harassment, criticism and reprimands during her last year of teaching.

Many of plaintiff's interrogatories go beyond an inquiry into actions regarding tenure or terms and conditions of employment, seeking information, for example, regarding hiring, promotions, transfers and discharge. Plaintiff has made no attempt to justify such a broad inquiry. In the context of an individual plaintiff alleging illegal denial of tenure, information concerning defendant's practices in hiring, promotion, transfer, discharge, and so on, "seems one step beyond the parameters of relevance in its broadest sense." *McClain v.*

*Mack Trucks, Inc.*, 85 F.R.D. 53, 62 (E.D. Pa.1979), citing *E.E.O.C. v. Packard Electrical Division*, 569 F.2d 315, 318 (5th Cir. 1978). This is particularly true following the most recent amendments to the Federal Rules of Civil Procedure, which are concerned with preventing "fishing expeditions," discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests. *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983). Before plaintiff will be permitted to inquire beyond the practices at issue in her case, she "must show a more particularized need and relevance." *McClain v. Mack Trucks, Inc., supra*, 85 F.R.D. at 62. Until such time, plaintiff shall be required to limit her inquiries to defendant's practices regarding tenure and the terms and conditions of employment. The only exception to this will be as to hiring by defendant for the 1977–78 school year, the year in which plaintiff was denied tenure. In order to make out a prima facie case, plaintiff may show that her position was filled by someone else. Therefore, plaintiff will be permitted to inquire into defendant's hiring of teachers for the 1977–78 school year.

### (4) *Time*

■ Plaintiff alleges that she was employed by defendant as a teacher from September 1974 through June 1977. In addition to challenging the legality of her denial of tenure, plaintiff also asserts that she was discriminated against in the terms, conditions and privileges of her employment. Therefore, I find that the entire period of plaintiff's employment is relevant.

The more difficult issue is determining whether plaintiff should be permitted to take discovery as to years preceding and following her employment. Some courts have limited discovery in a Title VII case to the years of plaintiff's alleged disparate treatment. *Hardrick v. Legal Services Corp., supra*, 96 F.R.D. at 618. Most courts, however, have recognized the relevance of defendant's conduct in prior years. It is well accepted, for example,

that defendant's conduct prior to the passage of Title VII is relevant to post-Act charges of discrimination. *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 305 (5th Cir.1973), *Evans v. I.B.E.W.*, 313 F.Supp. 1354, 1360 (N.D.Ga.1969). Courts have commonly extended the scope of discovery to a reasonable number of years prior to the defendant's alleged illegal action. *See McClain v. Mack Trucks, Inc., supra*, 85 F.R.D. at 63 (5 years prior to termination) citing *James v. Newspapers Agency Corp.*, 591 F.2d 579 (10th Cir.1979) (4 years), *Cormier v. PPG Industries*, 452 F.Supp. 594 (W.D.La.1978) (5 years), *Brown v. Ford Motor Co.*, 19 EPD ¶ 8969 (N.D.Ga.1978) (4 years).

Moreover, courts have also permitted discovery for periods *after* the alleged discrimination. *Milner v. Nat'l. School of Health Technology*, 73 F.R.D. 628 (E.D.Pa. 1977) (2 years afterward).

■ The major consideration of a court is to balance the clear relevance of the information against the burden on defendant. *See e.g., General Insurance Co. v. E.E.O.C.*, 491 F.2d 133 (9th Cir.1974) (8 years prior to action held excessive).

In this case, where plaintiff alleges discrimination not only as to her denial of tenure in 1977 but also as to the terms and conditions of her employment, plaintiff's inquiries going back to 1972 are not unreasonable and will be permitted. On the other hand, plaintiff's inquiry into periods past the years of her employment, covering 1979 "until the present," approximately a five-year period, is excessive and would impose too great a burden on defendant compared to the minimal relevance of such information. Plaintiff will be limited to discovery for a 2-year period past the conclusion of the 1976–77 school year, or up to June 1979, unless she can demonstrate the clear relevance of information beyond this period.

## (5) *Facility v. District-Wide Discovery*

■ Defendant contends that plaintiff's discovery requests should be restricted to the facility at which plaintiff was previously employed, citing cases where such a restriction was imposed. All the cases cited, however, are distinguishable from the facts on record in this case. In each of the cases cited by defendant, as well as in other cases in which such a restriction has been imposed, *see, e.g., McClain v. Mack Trucks, Inc., supra*, defendants have either introduced facts supporting its contention of undue burden, *Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588 (5th Cir.1978) (discovery request encompassed 7500 employees in 32 districts and 3 manufacturing plants), or demonstrated that decisions affecting the plaintiff were made at a facility level, rather than on a centralized basis, *Hinton v. Entex, Inc.*, 93 F.R.D. 336 (E.D.Texas 1981). No comparable showing has been made here. In previous answers to the EEOC's interrogatories, defendant acknowledges that the decision denying plaintiff's tenure was made by the Superintendent of the Camden School District. In the absence of contrary evidence, where tenure decisions are made at a district-wide level, district-wide discovery is clearly relevant and cannot be said to be overly burdensome. Therefore, no restriction as to work facility will be imposed at this time.

Defendant will be required to provide the discovery outlined above within thirty (30) days. Additionally, plaintiff will be permitted to re-serve up to 75 interrogatories, inclusive of subparts, in accordance with the above parameters, within twenty (20) days. Defendant will then be required to provide fully responsive answers, or specific objections to the new interrogatories, within 30 days of service.

An appropriate order will be entered.