**David G. FINCH, Plaintiff,**

v.

**HERCULES INCORPORATED, Defendant.**

**Civ. A. No. 92–251 MMS.**

United States District Court, D. Delaware.

June 2, 1993.

---

Richard G. Elliott, Jr., Theodosia Price, and Helen M. Richards, of Richards, Layton & Finger, Wilmington, DE, for plaintiff.

Sheldon N. Sandler, and Teresa C. Farris, of Young, Conaway, Stargatt & Taylor, Wilmington, DE, for defendant.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

Currently before the Court is plaintiff's motion to compel discovery pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, D.I. 29, in this civil rights action filed against Hercules Incorporated ("Hercules") under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (1988).[1] The fundamental issue is the scope of discovery permissible in a discrimination case involving a corporation with a national presence.

In interrogatories 13 and 14 and in document request number 15, plaintiff seeks any adverse age discrimination rulings from either federal or state agencies against the defendant from 1985 onward. Interrogatories 18, 19 and 20 seek statistical information on terminations, lay-offs and retirees. Document request number 25 seeks documentation of early retirement plans offered to defendant's employees from 1985 onward. Finally, document request number 39 seeks

---

1. Plaintiff had asserted a second, state-law claim. The state-law claim, however, has been dis- missed. *Finch v. Hercules, Inc.*, 809 F.Supp. 309, 313 (D.Del.1992).

merit salary increase guides from 1985 onward. For the reasons which follow, plaintiff's motion will be granted in part and denied in part.

## I. *Facts*

Plaintiff had been the General Auditor of Hercules for eleven years. D.I. 1 at ¶¶ 7–8. In his position, he reported to the board of directors through an Audit Committee and also reported to Arden Engebresten, who was the Vice Chairman of the board and the Chief Financial Officer. *Id.* In January and February of 1991, changes occurred which altered to whom plaintiff reported and eventually led to plaintiff's dismissal, effective February 28, 1991. D.I. 1 at ¶ 14.

Both parties agree that plaintiff's dismissal came as part of a reduction in force performed by the defendant.[2] To accomplish the reduction in force, defendant issued "operational guidelines" which established a "Policy Compliance Committee" to "monitor corporate downsizing" on March 19, 1990. D.I. 33 at Ex. 1.

The guidelines which led to plaintiff's dismissal indicate that the decision involved a two-step process within Hercules. The guidelines provide:

The process starts with the Business Group or Unit designing the new organization which will indicate the changes and reductions on the new organizational chart. Following approval of the new organizational structure, the Unit Executive will schedule a meeting with the Policy Compliance Committee (PCC) to *seek approval of the separation and displacement recommendations.*

D.I. 33 at Ex. 1 (emphasis in original). Age was included within the information each unit had to provide to the Policy Compliance Committee. However, the guidelines provide *"Age is not a factor in the selection process."*

At the time of these events, defendant had approximately 17,300 employees working at 59 major plants worldwide and 20 domestic sales offices. D.I. 33 at Ex. A, 2. In its corporate headquarters in Wilmington, Delaware, defendant maintained approximately 1600 employees, including plaintiff. D.I. 33 at Ex. A, 1. In the reorganization which occurred in early 1991, approximately 400 of the 1600 employees at the headquarters left the corporation. *Id.*

## II. *Discussion*

According to the Federal Rules of Civil Procedure,

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). In this action, the subject matter is age discrimination in employment. D.I. 1 at ¶ 19. Discovery requests in discrimination cases have received particularly liberal treatment by the courts. As then Chief Judge Latchum explained in this district,

Although delineating the boundaries of appropriate discovery can be challenging and difficult, discovery will be permitted "unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." ... the necessity for liberal discovery to clarify the complex issues encountered in litigation seeking to redress employment discrimination has been widely recognized.

*Marshall v. Electric Hose and Rubber Co.,* 68 F.R.D. 287, 295 (D.Del.1975) (quoting *La Chemise Lacoste v. Alligator Co.,* 60 F.R.D. 164, 171 (D.Del.1973) (citations omitted). *See also Trevino v. Celanese Corp.,* 701 F.2d 397, 405 (5th Cir.1983) (vacating protective order which limited discovery because, in part, "imposition of unnecessary limitations on discovery is especially frowned upon in Title VII cases"). In this case, most of the discovery requests involve three central issues of relevancy: the substantive relevance of the information; the breadth of discovery within the corporation; and the pertinent time frame

---

**2.** There is some dispute as to the duration of the downsizing at issue. *See, infra,* at 64–65.

within which plaintiff should be allowed to seek discovery.

### A. *Substantive Relevance*

■ With respect to the substance of discovery requests in discrimination cases, wide latitude has been granted. As courts have recognized, "claims of disparate treatment of necessity require discovery of how others have been treated...." *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983). *See also Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 58 (D.N.J.1985) ("Discrimination on the basis of race is by definition class discrimination and the existence of a pattern of racial discrimination in a job category may well justify an inference that the practices complained of were motivated by racial factors."). Even in disparate treatment cases, plaintiffs may use statistical information to buttress their cases. *See Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 542 (3d Cir.1992) ("Statistical evidence of an employer's pattern or practice with respect to minority employment may be relevant for a showing of pretext."). The Court finds that the information requested by plaintiff is relevant to his discrimination claim for two different reasons.

First, employer practices, such as who has been offered an early retirement plan, who has been awarded merit salary increase or who has been temporarily laid-off, may help to display discriminatory intent and thus strengthen plaintiff's claim.[3] Well timed, or executed effectively, the employer could easily exercise discrimination by these means, reducing opportunity and equality in the work place. It follows that information on this potentially discriminatory conduct could be used by a plaintiff to raise an inference of discrimination or rebut any non-discriminatory reason offered by a defendant.

The Federal Rules allow for discovery not only of admissible evidence, but any "information ... reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). Ascertaining if discrimination appears in other employment decisions made by the defendant could lead to sources of discrimination which overlap with the decision to terminate plaintiff. For these reasons, the Court refuses to limit discovery to defendant's termination practices and finds the information relevant for purposes of discovery.

■ As to the second justification for the discovery, plaintiff also argues the discovery will aid plaintiff in establishing a willful violation of the ADEA with the prospect of liquidated damages as available under the Act. 29 U.S.C. § 626(b). The United States Supreme Court recently addressed willful violations of the ADEA, and "concluded that 'a violation of the Act [would be] "willful" if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" *Hazen Paper Co. v. Biggins*, — U.S. —, —, 113 S.Ct. 1701, 1708, 123 L.Ed.2d 338 (1993) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985)) (brackets in original). Plaintiff argues that if he can show that the defendant had previously been ruled against in age discrimination cases and nevertheless continued similar practices elsewhere in the corporation, then defendant will have acted with "reckless disregard". To make this showing, plaintiff requests any available adverse rulings in prior age discrimination complaints. As the Supreme Court noted in *Biggins*, "It is not true that an employer who knowingly relies on age when reaching its decision invariably commits a knowing or reckless violation of the ADEA." *Biggins*, — U.S. at —, 113 S.Ct. at 1709. Knowing use of age does not necessarily amount to a willful violation. Instead a willful violation occurs when an employer knowingly violates the ADEA. If plaintiff establishes any prior adverse legal actions in ADEA matters, the existence of such rulings would shed light on the issue of wilfulness if the fact-finder first determines an ADEA violation occurred. *See Dreyer v. Arco Chemical Co., Div. of Atlantic Richfield, Co.*, 801 F.2d 651, 658 (3d Cir.1986)

---

**3.** While an employer discriminating on account of age may evince that discrimination in a myriad of ways, there is no logical connection between instances of age discrimination and instances of race or gender discrimination. Plaintiff has correctly withdrawn his requests for information relevant to types of discrimination other than age.

("evidence that the employer had previously violated the ADEA might warrant imposition of liquidated damages...."), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987).

For the forgoing reasons, the Court finds that defendant's objections to interrogatories 13, 14, 18, 19 and 20 and document request number 15 as to the content of the information are not persuasive.

### B. *Scope Within the Corporation*

Finding that the sort of information requested is relevant does not necessarily mean it is relevant for an indefinite period of time. Nor does it mean such information must be produced for all locations within the United States, especially when the incident occurred at the company's headquarters in Delaware. The information relevant to determining whether discrimination occurred in this case is that information which sheds light on how, within the corporation, this employment decision was made. As defendant points out, "Where ... the employment decisions were made locally, discovery on intent may be limited to the employing unit." *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1084 (11th Cir.1990). *See also EEOC v. Packard Elec. Div., General Motors, Corp.,* 569 F.2d 315, 318 (5th Cir.1978) ("In the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which individual complainant complains...."). In those cases, to justify discovery beyond that unit, courts have required a plaintiff to "show a more particularized need and relevance." *Marshall v. Westinghouse Elec. Corp.,* 576 F.2d 588, 592 (5th Cir.1978). The restriction to a particular work unit, however, is most appropriately applied in cases "involving highly individualized claims of discriminatory treatment...." *Hardrick,* 96 F.R.D. at 619. *See also EEOC v. Packard Elec. Div., General Motors, Corp.,* 569 F.2d at 316 (noting "the relatively narrow factual situations" of plaintiffs' complaints in upholding district court's refusal to allow company-wide discovery).

In this case, plaintiff was terminated as part of a reduction in force performed by the defendant's "Policy Compliance Committee". The guidelines which governed this Committee's actions indicate that the Committee did not make the initial decision to terminate. The Committee did, however, possess a power of approval over the choices referred to it by each individual work unit. In light of the two-step process, discrimination could have occurred either when the individual work unit proposed names, or when the Committee exercised its approval power.

■ Because the plaintiff's termination occurred by decisions made by both his individual work unit and the Committee, the Court finds that information which will reflect on the decision making of either of these bodies is relevant. The existence of a body outside the plaintiff's work unit which had approval power over his termination precludes a limitation of discovery to the individual work unit. However, this conclusion does not justify extending discovery beyond information which pertains to the Committee or the local work unit. The only discovery outside the local work unit which is relevant to plaintiff's claim is the discovery pertaining directly to the activities of the Committee which performed its function nationwide. For this reason, plaintiff's motion to compel with respect to interrogatories 13, 14, 18, 19 and 20 and document request number 15 will be granted within the local work unit and outside the unit only as to the activities of the Committee.

### C. *Relevant Time Frame*

■ With respect to much of the requested discovery, plaintiff seeks information stretching back to 1985. Defendant, on the other hand, is willing to offer information only back to 1989. As other courts have recognized, a reasonable time period before the discrimination should be allowed. *See, e.g., Hardrick,* 96 F.R.D. at 619 (restricting discovery to "reasonable related ... time frame" and allowing two years worth); *Cormier v. PPG Industries, Inc.,* 452 F.Supp. 594, 596 (W.D.La.1978) (finding five years to be a reasonable time within which to show discrimination). Plaintiff argues for discovery as far back as 1985 by casting his dismissal as part of a continuing, expansive corporate downsizing of which the 1990–1991 reduction in force was only a part.

Plaintiff's argument does not justify extending the relevant time frame back to 1985.

The fact that the defendant may have downsized in the six years prior to plaintiff's dismissal does not mean that all decisions to terminate in those years are relevant to plaintiff's termination. If plaintiff can show a trend of age discrimination in the two years prior to his own dismissal, a similar showing for the four previous years will not add to the evidence. On the other hand, if plaintiff can only show a pattern of discrimination between 1985 and 1989, but not 1989 to 1991, any weak inference that plaintiff was discriminated against in 1991 does not warrant subjecting defendant to the necessity of searching its records for the period 1985 to 1989.

The Court concludes on the facts of this case that providing two years of information prior to plaintiff's dismissal will allow plaintiff sufficient scope to discover discriminatory practices. All discovery requests will be limited from 1989 forward.

### III. *Conclusion*

For the forgoing reasons, plaintiff's motion will be granted in part and denied in part. An appropriate order will issue.