Ronald J. KRESEFKY, et al., Plaintiffs,

v.

PANASONIC COMMUNICATIONS AND SYSTEMS CO., et al., Defendants.

Civil Action No. 95–2073 (AMW).

United States District Court, D. New Jersey.

Aug. 9, 1996.

56

Michael W. Sozansky, Jr., John H. Rittley, Ligorano & Sozansky, Flemington, NJ, for Plaintiffs.

Robert H. Simandl, W. Orange, NJ, Michael C. Towers, David R. Kresser, Fisher & Phillips, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION

WOLIN, District Judge.

This matter comes before the Court upon the following motions: (1) plaintiffs' motions to proceed as a collective action, for limited certification as a class action, and to amend the complaint; (2) plaintiffs' subsequent appeal of the order of Magistrate Judge Joel A. Pisano ("Judge Pisano") which struck and/or limited the scope of certain interrogatories plaintiffs had served upon defendants; and (3) plaintiffs' motion and defendants' cross-motion for sanctions. The Court has considered these matters upon the parties' written submissions pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny plaintiffs' motion to proceed as a collective or class action, grant plaintiffs' motion to amend the complaint, affirm Judge Pisano's decision and deny all parties' motions for sanctions.

## *BACKGROUND*

Defendants in this action are Matsushita Electric Corporation of America ("MECA"), Panasonic Communications and Systems Co. ("PCSC"), and various named and fictitious individual defendants who are or have been MECA employees and/or officers. PCSC was, at all relevant times, an unincorporated division within MECA.[1] Plaintiffs, who state

---

1. Although plaintiffs have made strenuous efforts to characterize the PCSC division as a mere fictitious or alter-ego-type manifestation of MECA, they have not challenged defendants' basic assertion that plaintiffs all worked within a unit of the company which was known as PCSC and which was devoted in large part to the sale, marketing and service of computer printers. Defendants concede that it was MECA who actually employed plaintiffs.

in the complaint that they bring this action individually and on behalf of all others similarly situated, are Ronald J. Kresefky ("Kresefky"), Peter H. Reyman ("Reyman"), Kenneth G. Kaplan ("Kaplan") and William F. Suto ("Suto"). All the named plaintiffs are former MECA employees who were discharged as part of a reduction in force ("RIF") in December 1993. All are caucasians of American origin[2] who were, at the time of their terminations, over 40 years of age.[3]

Plaintiffs allege that the RIF was pretextual and that their terminations were in fact motivated by discrimination based upon age, race and national origin. They also contend that they were subject to various forms of harassment and discriminatory treatment before their terminations—for example, in the company's delegation of job responsibilities and opportunities for promotions and transfers—and during MECA's efforts in early 1994 to reemploy workers affected by the RIF in other areas of the company.

After their terminations, plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") pursuant to 29 C.F.R. §§ 1601 et seq. Kresefky, Reyman and Kaplan received "right to sue" letters from the Newark EEOC office in January 1995. Suto received a "right to sue" letter from the Atlanta office in March 1995, but it was revoked in June 1995. In the meantime, however, plaintiffs brought the present action in May 1995.

Plaintiffs assert causes of action for violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. (the "ADEA"), for discrimination on the basis of national origin and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), for violation of their civil rights pursuant to 42 U.S.C. § 1981 ("§ 1981"), for age and national origin discrimination and for conspiracy under the New Jersey Law Against Discrimination (the "NJLAD") and the Connecticut Law Against Discrimination (the "CLAD"), and under common law theories of wrongful discharge, breach of implied contract and intentional tort. Plaintiffs seek general and special damages, including back and front pay, punitive damages, pre-judgment interest, costs and attorneys' fees, and imposition of statutory penalties under the NJLAD. They seek to proceed as a collective action on their ADEA claims and move for class certification on their Title VII and § 1981 claims.

Defendants claim that MECA's PCSC division initiated and carried out the RIF, and that the RIF was justified by a projected decline in that division's profitability due to a competitor's introduction of a new and better product. Specifically, defendants claim that PCSC's major product line was dot matrix and laser printers and that a competitor's Inkjet printer made substantial inroads into that market. Defendants aver that the RIF affected only PCSC employees, that the president of that division made the decision to implement the RIF (with MECA's approval) and that all individual termination decisions were made within PCSC.

Plaintiffs essentially counter that MECA created the PCSC division and transferred them into it in order to marginalize and then terminate them. Specifically, they assert, "MECA constructed this pool of employees to control the reduction-in-force, so that those effected [sic] by the alleged reduction-in-force would pass the EEOC guidelines for disparate impact purposes." (Class Cert.Br. p. 2) Plaintiffs contend that defendants have misrepresented or implied that it was PCSC which employed, managed and terminated them, when in fact it was MECA. Indeed, plaintiffs allege, PCSC was "nothing more

---

2. Plaintiffs allege that MECA extended preferential treatment to persons "who were of Japanese ancestry, who learned the Japanese language, who spoke the Japanese language in the workplace, who married persons of Japanese ancestry, or who otherwise embraced Japanese customs." (Compl. ¶ 8)

3. According to defendants, the RIF initially affected 99 out of a total of 658 employees of the PCSC division. Of the 99 employees selected for termination, 49 were within the protected age group of 40 years or older. Before the effective date of the terminations, however, 27 of the 99 affected employees had obtained jobs elsewhere within MECA. Thus, at the time the terminations took effect, 64 former PCSC workers had lost their jobs; of these, 34 were within the protected age group.

than a fiction created by MECA for self-serving purposes—and not even a legal fiction at that." (Class Cert.Reply Br. p. 2)

This Court finds that the exact legal status of PCSC vis-a-vis MECA is irrelevant for purposes of these motions. Plaintiffs have not challenged defendants' contention that they all worked in a discrete unit of MECA known as PCSC; indeed plaintiffs themselves named PCSC as a defendant both in their EEOC charges and in this action. Nor have defendants contested plaintiffs' claim that their actual employer was MECA.

### CLASS CERTIFICATION AND COLLECTIVE ACTION MOTIONS

The ADEA, 29 U.S.C. § 626(b), authorizes "opt-in" class actions for age discrimination under the rules and procedures set forth in section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b), as amended. *See Whalen v. W.R. Grace & Co.,* 56 F.3d 504, 506 & n. 3 (3d Cir.1995) (noting difference between § 16(b) class actions and class certification under Fed.R.Civ.P. 23); *Sperling v. Hoffmann–La Roche, Inc.,* 24 F.3d 463, 464 (3d Cir.1994). Plaintiffs assert that "the true pool of potential plaintiffs" for such a class in this action "would be any employee of MECA, who lost employment due to a reduction-in-force by MECA." (Class Cert. Br. p. 5) They acknowledge that the statute requires that all members of a class be "similarly situated," but contend that the putative class members are similarly situated because they all "worked for the defendant company; advanced similar claims of age-based discrimination and similar bases for the claims; and, substantially sought the same form of relief." (*Id.*) They also claim that the putative class members "are over the age of forty, they all were apparently earning more wages than there [sic] younger counterparts,

they were terminated by MECA through a reduction-in-force." [4]

To obtain class certification for their Title VII and § 1981 claims, plaintiffs must satisfy the requirements of Federal Rule of Civil Procedure 23(a), to wit:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

These four requirements are commonly referred to as numerosity, commonality, typicality and adequacy of representation. *See, e.g., Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657, 661 (E.D.Pa.1980). To certify plaintiffs' proposed class, this Court must also find that

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**4.** As demonstrated by the above-quoted language from plaintiffs' motion papers, the scope of the proposed class appears to fluctuate. At times it seemingly encompasses any MECA employee who has ever been affected by a RIF, while at other times it appears limited to those employees affected by the December 1993 RIF, or even further limited to those employees affected by the December 1993 RIF who were over 40 years old and earning more than their younger counterparts. Moreover, it is not clear from the complaint whether plaintiffs seek relief—either for themselves alone or on behalf of others—only for wrongful termination or whether they also seek relief for defendants' alleged wrongful discriminatory treatment of them during their employment or for failure to rehire.

Fed.R.Civ.P. 23(b)(3).[5]

Again, plaintiffs have not clearly set forth the parameters of their proposed class. At one point, they assert that the "broadest application of the class would include employees of MECA who were affected by the RIF and other like, personnel action, based upon national origin and race discrimination." (Class Cert.Reply Br. p. 9) At another point, they contend that the proposed class encompasses "any employee who was involuntarily separated from MECA (not [PCSC]) due to a reduction-in-force within the same relative time period as the December 13, 1993 reduction-in-force." (Class Cert.Br. p. 9) Yet again, they appear to limit the class to those employees terminated in the December 13, 1993 RIF. (Class Cert.Reply Br. p. 7) Plaintiffs assert that common issues of fact include "the ages of the employees selected for termination by MECA, the employment-related policies of MECA, the employment-related practices of MECA and MECA's manner of selection of MECA employees for termination." (*Id.* at pp. 9–10) The common issues of law, they contend, "relate to whether the common facts result in disparate impact or disparate treatment." (*Id.* at p. 10)

Defendants' first line of attack on plaintiffs' motion to proceed collectively is that the scope of the present action is limited by the Charges of Discrimination ("EEOC charges") each named plaintiff filed with the EEOC pursuant to 29 C.F.R. §§ 1601 *et seq.* According to defendants, neither the proposed class representatives [6] nor the other two named plaintiffs in this action raised class or group claims in their EEOC charges, nor did they claim that any of the defendants discriminated against them on any basis other than age, or that defendants' conduct violated Title VII, or that defendants took any adverse employment action against them other than termination.

■ If none of the named plaintiffs have filed an EEOC charge which alleged, or at least put defendants on notice of, class-wide discrimination charges, they may not proceed with their class claims before this Court. In *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 53 (3d Cir.1989), *overruled on other grounds* as recognized by *Antol v. Perry*, 82 F.3d 1291, 1301 (3d Cir.1996), the Court refused to allow joinder of new plaintiffs who had not filed timely EEOC charges where the named plaintiffs' EEOC charges had not alleged class claims. *See also Lusardi v. Lechner*, 855 F.2d 1062, 1077–1078 (3d Cir. 1988) (emphasis added) (citations omitted) (adopting majority view that "individual filings are not a prerequisite to 'opting into' a class action, *so long as* a representative complaint was filed with the EEOC within the 180/300 day time limit ... [because] a representative complaint meets the purpose of the EEOC filing, which is to provide notice to the employer and an opportunity for conciliation").

■ Plaintiffs are correct that the charge need not specifically state that it is being brought on behalf of "others similarly situated," *Lockhart*, 879 F.2d at 53, *citing Lusardi*, 855 F.2d at 1078; indeed, the charge "needs only to allege class issues that may subsequently form the basis for a 'class action.'" *Whalen v. W.R. Grace & Co.*, 56 F.3d 504, 507 (3d Cir.1995), *citing Lusardi*, 855 F.2d at 1078. Such notice, however, is a "prerequisite" to a court class action. *Sperling v. Hoffmann–LaRoche, Inc.*, 24 F.3d 463, 465 n. 2 (3d Cir.1994).

The *Lusardi* Court found that the following EEOC charge "clearly notifie[d] [defendant] Xerox that it allegedly discriminated against persons over forty years old as a class:"

> Xerox has engaged *and is continuing to engage in* employment practices related to hiring, training, promotion and termination of *past, present and future employees* which discriminate against persons *such as myself* over forty *as a class* particularly with respect to the implementation of a reduction in salaried work force.

---

5. Certification of a class action requires that the movant satisfy both subpart (a) and subpart (b) of Rule 23. Subpart (b) may be satisfied in one of three ways; plaintiffs, however, have only attempted to show compliance with subpart (b)(3).

6. Plaintiffs designate Kresefky and Reyman as proposed class representatives.

855 F.2d at 1078 (emphasis added). As set forth below, the EEOC charges which the named plaintiffs in this action filed do not provide such clear notice of class claims.

The EEOC charge is a form document. In two different places, it requires a selection of grounds for the claimant's charge of discrimination. In both places, each named plaintiff selected the age discrimination option and ignored all others, including Title VII, race and national origin discrimination.[7] In the space designated for the "particulars" of the complaint, Kresefky stated:

I was employed by the above named company from May 18, 1987, until January 31, 1994, at which time I was involuntarily terminated from my position as Product Manager. On December 13, 1993, I was informed by Mr. Tim Curran, Vice–President PCSC and Mr. Dan Breheney, HR Manager PCSC, that I was being terminated effective January 31, 1994, as a part of a nationwide downsizing of the Computer Products Group. However, I was replaced by a less experienced younger female employee. I believe that I have been discriminated against because of my age (47) in violation of the Age Discrimination in Employment Act of 1967, as amended.

(Aff. of Daniel Breheney, Exh. 6) The "particulars" of Reyman's claim were stated as follows:

I was hired by the above-named employer on October 28, 1985. My performance and attendance during my employment has been satisfactory. I was permanently laid off from my position as Product Manager on January 31, 1994 due to a downsizing. Younger, less experienced and less senior employees were retained. I allege that I was discriminated against because of my age (48) in violation of the Age Discrimination in Employment Act.

(*Id.*) Similarly, Suto's charge simply states:

I was hired in May 1981. On or about December 18, 1993, I was advised in writing that I was going to be laid off effective January 31, 1994. I was one of approxi-

mately 100 employees laid off from the New Jersey location, and I was the oldest employee laid off from my Service Area. I believe I was discriminated against because of my age, 59.

(*Id.*) Finally, the "particulars" of Kaplan's charge read:

I was hired by the above-named employer on October 28, 1981. My performance and attendance during my employment was satisfactory. I was permanently laid off from my position as Product Support Manager on January 31, 1994 due to a downsizing. Fourteen (14) employees were affected in my division (Marketing). Ten were within the protected age group. Younger, less experienced and less senior employees were retained. I allege that I was discriminated against because of my age (52) in violation of the Age Discrimination in Employment Act.

(*Id.*)

■ Clearly, these charges were not sufficient to put defendants on notice of class claims against them. Kaplan is the only named plaintiff who even referred to other terminated employees within a protected group, and his charge is otherwise directed solely toward his own claims.[8] By contrast, the charge which the *Lusardi* Court found to have provided adequate notice of class claims alleged that the defendant had engaged *and was continuing to engage in* specified discriminatory practices against *past, present and future employees "such as"* the named plaintiff, and referred to this group as *class. Lusardi*, 855 F.2d at 1078. Kaplan's allegation that ten of the fourteen employees terminated from the marketing department in which he worked were within the protected age group does not suffice to place defendants on notice of class claims in the face of his repeated references to his own performance, his own termination and the discrimination he personally suffered. Because plaintiffs failed to notify defendants of their potential class claims in their EEOC charges, the Court will deny plaintiffs' request to pro-

---

7. Each also names "Panasonic Communications" as the "employer" who discriminated against him.

8. Moreover, plaintiffs have not designated Kaplan as a proposed class representative.

ceed as a collective action on their age discrimination claims.[9]

■ Additionally, defendants contend that plaintiffs lack standing to assert even their own Title VII claims for race and national origin discrimination, as well as their claims arising out of employment events other than their terminations, on the ground that plaintiffs failed to raise them in their EEOC charges. In *Sandom v. Travelers Mortgage Services, Inc.*, 752 F.Supp. 1240, 1246–47 (D.N.J.1990) (citations omitted), the Court stated:

> The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Thus, a subsequent civil action may only encompass forms of discrimination similar or related to those filed in the EEOC charge.

The EEOC need not actually have investigated the plaintiff's claim; an action may be pursued for claims which would have been within the scope of a reasonable EEOC investigation if it had occurred. *Nixon v. Runyon*, 856 F.Supp. 977, 987 (E.D.Pa.1994), *citing Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966–67 (3d Cir.1978), *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977).

The *Sandom* Court dismissed a sexual harassment claim which had not been raised in the plaintiff's EEOC charge of sex discrimination, finding that the harassment claim would "most likely not have arisen out of a reasonable EEOC investigation of the filed claim absent a specific allegation in the charge." 752 F.Supp. at 1248. The Court distinguished cases in which courts had heard claims which had not been specifically mentioned in prior EEOC charges on the ground that those claims generally "arose during the pendency of the EEOC investigation, or were closely related to conduct alleged in the charge (such as a claim of retaliation for filing the charge) or were considered explanations of the original charge." *Id.* (citations omitted).

The *Sandom* Court also noted that "[i]n general, certain claims of discrimination in the workplace, not filed in the EEOC charge, have been determined not to be similar, nor related, to a form of employment discrimination which was included in the administrative complaint," citing cases which found that failure to rehire fell outside the scope of an EEOC charge which had alleged discriminatory termination and that a claim for discriminatory job demotion fell outside the scope of an administrative complaint which had alleged only instances of discrimination involving a co-worker. *Id.* at 1247 (citations omitted).

In *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960 (3d Cir.1978), the Court refused to grant summary judgment in defendants' favor even though the plaintiff had raised a sex discrimination claim which he had not included in his EEOC charge; however, in that case there was evidence that EEOC officials had improperly refused to allow the plaintiff to amend his charge to include the omitted claim, *id.* at 964, and the fact that the plaintiff sought the amendment indicated to the Court that the EEOC's investigation should reasonably have uncovered the claim. *Id.* at 966. By contrast, in a case in which the evidence indicated that the plaintiff had "con-

---

9. Plaintiffs also assert that "the Atlanta EEOC action in this matter" is a group action. (*See* Sozansky Aff. dated Jan. 16, 1996, ¶ 8) It is unclear whether plaintiffs refer to Suto's EEOC charge or to another EEOC action pending in that district. As noted above, the Atlanta office of the EEOC revoked Suto's right to sue letter in March 1995. Plaintiffs attach an Affidavit dated April 18, 1994 which bears the Suto charge case number, refers to a separate EEOC class charge also pending in the Atlanta office, and states that Suto will opt into that class action when he receives the necessary paperwork. This Court fails to see the relevance of this otherwise unidentified group charge, which apparently involves none of the named plaintiffs at the present time. Kresefky and Reyman further allege that they made it clear to the EEOC before they filed their charges that they believed they had been the victims of discrimination that involved other similarly situated employees. Plaintiffs do not allege, however, that the EEOC refused to issue a group charge; nor do they cite any authority for the proposition that EEOC error excuses a failure to satisfy the requirement that the EEOC charge provide notice of class claims before they may be brought in court.

sciously bypassed the administrative process" by intentionally omitting a sexual harassment claim from his EEOC charge, the Court refused to allow the plaintiff to add that claim to his discrimination action. *Zalewski v. M.A.R.S. Enterprises, Ltd.*, 561 F.Supp. 601 (D.Del.1982).

Here, plaintiffs allege that the EEOC refused to advance their claims for race and national origin discrimination. Reyman attests: "Prior to the time of the filing of my EEOC charge, I had numerous conversations with EEOC officials. During these conversations, I expressed my opinion that I had been discriminated against by the defendants on the basis of my national origin and race as well as my age. Each time that I would express the above to the EEOC, they told me in no uncertain terms that they only wanted to deal with the age discrimination claims and they did not want to hear anything about the race and national origin discrimination claims.... I had no input into the particular claims that would be asserted by me before the EEOC." (Reyman Aff. dated Jan. 17, 1996, ¶¶ 4–7)

Similarly, Kresefky avers: "I stated during my interviews with the EEOC that I had also been a victim of race and national origin discrimination by the defendants, in addition to age discrimination. The EEOC representatives told me that they would not even consider any national origin or race-based claims and they refused to include these claims within my charge. Even after I reviewed the charge for my signature, I [again] raised these other claims. The EEOC refused to consider those claims and said they only wanted to consider the age claim.... I had no control over which particular claims were included with the EEOC charge." (Kresefky Aff. dated Jan. 16, 1996, ¶¶ 4–6, 12) Kresefky attaches a letter he wrote to the EEOC in March 1994 which alludes to harassing comments his supervisor made relating to his nationality and to alleged national origin discrimination in his termination. (Kresefky Aff. dated Jan. 16, 1996, Exh. B)

If unrebutted, this testamentary and documentary evidence that a reasonable EEOC investigation into Kresefky's and Reyman's claims should have uncovered their race and national origin discrimination claims would allow Kresefky and Reyman to pursue them on an individual basis before this Court. The factual record is not yet sufficiently developed, however, for the Court to make a final determination on the question. Thus, the possibility remains that this Court might ultimately conclude that plaintiffs' failure to assert their race and national origin discrimination claims in their EEOC charges precludes them from raising them here. This possibility, in turn, raises obvious questions about the commonality and typicality of the named plaintiffs' claims vis-a-vis other putative class members' claims, as well as the extent to which the named plaintiffs' interests coincide with other class members' interests.

■ Moreover, plaintiffs have utterly failed to make a proper showing of the four elements necessary for class certification. A Title VII class action may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been met. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Precision in pleading is essential because "'without reasonable specificity the court cannot define the class, cannot determine whether the representation is adequate, and the employer does not know how to defend,'" and because an overbroad class carries potential for unfairness to class members. *Id.*, citing *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125–27 (5th Cir.1969) (Godbold, J., concurring). The mere allegation that employment discrimination has occurred

neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been [discriminated against], and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the indi-

vidual's claim will be typical of the class claims.

*Id.,* 457 U.S. at 157, 102 S.Ct. at 2370. Proof of plaintiffs' individual claims simply will not suffice to establish eligibility for class certification. *Id.,* 457 U.S. at 157–58, 102 S.Ct. at 2371. If it did, every Title VII case would be a potential companywide class action. *Id.,* 457 U.S. at 159, 102 S.Ct. at 2371.

Although there may be times when the pleadings themselves make it clear that collective proceedings are appropriate, *id.,* 457 U.S. at 160, 102 S.Ct. at 2372, this is not such a case. As defendants point out, even the various named plaintiffs worked in different groups within PCSC, in different geographic areas, and in different job types with different responsibilities. Thus, defendants state, different group managers made individual termination decisions as to each plaintiff, and for many different reasons. It is far from clear that this case is best tried as a collective action, and plaintiffs simply have not satisfied their burden of complying with the strict requirements of Rule 23.

■ As set forth above, plaintiffs have failed to delineate the boundaries of their proposed class with any precision whatever. Thus, this Court is unable even to evaluate whether the numerosity element has been met. Plaintiffs' commonality and typicality showing is essentially limited to their allegations that (1) all class members suffered some kind of discriminatory treatment during their employment at MECA as a result of some unsubstantiated MECA policy, and that (2) they seek the same relief. This too is patently insufficient. Thus, this Court will deny plaintiffs' motion for class certification on their race and national origin discrimination claims.

■ Plaintiffs' § 1981 claims are not subject to the exhaustion requirements of Title VII. Accordingly, defendants have not challenged plaintiffs' right to bring these claims on an individual basis. They do challenge

their viability as class claims, however; and, given the Court's disposition above, defendants are clearly correct. Plaintiffs have not established the four Rule 23(b) requirements for their § 1981 claim any more satisfactorily than they did for their Title VII claims. Moreover, the § 1981 claim is only one of 15 counts in the complaint. This further erodes plaintiffs' claims of typicality and commonality with other class members.

For the above-stated reasons, the Court will deny plaintiffs' motion to proceed as a collective action in its entirety.

## MOTION TO AMEND

Plaintiffs have moved, as an alternative to class or collective action certification, to amend the complaint to add as plaintiffs William Spadola and Michael West. Under Federal Rule of Civil Procedure 15(a):

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Defendants do not object to the proposed amendment. (Class Cert.Opp.Br. p. 32) Accordingly, the Court will grant plaintiffs' motion to amend the complaint.[10]

## APPEAL OF JUDGE PISANO'S DECISION

■ The Federal Magistrates Act and Rule 40 D of the General Rules for the District of New Jersey (the "Local Rules") provide that the Court can refer certain non-dispositive matters to the Magistrate Judge for ruling. This Court may only set aside a magistrate's judgment on a non-dispositive motion if it is clearly erroneous or contrary to law. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485

10. Although the Court notes defendants' objection, it will neither address nor comment upon plaintiffs' statement, in footnote 8 of their class certification brief, that they "would also seek to add the individuals under the pending group charge from the Atlanta Office of the EEOC conditioned on the course of action chosen by the EEOC and any other former employee who was involuntarily separated from MECA due to a reduction-in-force." Such a motion is not before the Court at this time.

(1987), *citing* 28 U.S.C. § 636(b)(1)(A). *See also* Fed.R.Civ.P. 72(a); Local Rule 40 D(4). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Rodriguez v. American Tel. & Tel. Co.*, 1991 WL 3304, *2 (D.N.J.), *quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion. *Carey v. Foster Wheeler Corp.*, 1991 WL 10033, *3 (D.N.J.); *Environmental Tectonics Corp. Int'l v. W.S. Kirkpatrick & Co.*, 659 F.Supp. 1381, 1399 (D.N.J. 1987), *aff'd in part, rev'd in part on other grounds*, 847 F.2d 1052 (3d Cir.1988), *aff'd*, 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990) (citing cases); *see also Schroeder v. Boeing Comm'l Airplane Co.*, 123 F.R.D. 166, 169 (D.N.J.1988) (magistrate has wide discretion provided opinion is based upon clearly articulated principles).

■ The scope of permissible discovery under the Federal Rules of Civil Procedure is broad:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). Moreover, courts have been cautioned not to impose unnecessary limitations on discovery, especially in Title VII cases. *Robbins v. Camden City Board of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985). But the scope of Title VII discovery is "not without limits.... Discovery should be tailored to the issues involved in the particular case." *Id.* (citations omitted).

On April 22, 1996, Judge Pisano heard oral argument and issued an oral decision on plaintiffs' motion to compel answers to 95 interrogatories. Judge Pisano determined that certain of the interrogatories sought information whose relevance was outweighed by the burdens it would impose upon defendants; he limited the scope of other interrogatories for the same reason. Indeed, Judge Pisano found that much of the information plaintiffs sought "bears inconceivable relevance to the subject matter of the suit." (Op. p. 15) The main points of contention were, and on the present appeal remain, the proper time frame for discovery and the extent to which defendants must supply information on a MECA–wide basis, as opposed to a more limited focus on PCSC materials. This Court finds no abuse of discretion in Judge Pisano's decision and will affirm it in all respects.

Plaintiffs contend that Judge Pisano's ruling failed to take account of the theory of their case, to wit, that MECA created the PCSC division and transferred them into it so that MECA could later effect a RIF that would survive disparate impact scrutiny, and that defendants' purported justification for the RIF—that it expected the division to suffer a financial downturn—was a mere pretext for discriminatory motives. To test this justification and prove their case, plaintiffs explain, they require detailed information about the formation of PCSC as well as MECA–wide financial and personnel information. Plaintiffs contend that the distinction defendants have drawn between PCSC and MECA is a false one, and that the Court should therefore not accept it for discovery purposes.

■ This Court views with skepticism plaintiffs' theory that MECA created, staffed with hundreds of employees, and maintained for over four years an entire business division for the express purpose of disguising discriminatory motives for future employee terminations. This Court agrees with the Eleventh Circuit that "[a] vague possibility that loose and sweeping discovery might turn up something suggesting that the structuring of the RIF was discriminatorily motivated does not show particularized need and likely

relevance that would require moving discovery beyond the natural focus of the inquiry." *Earley v. Champion Int'l .Corp.,* 907 F.2d 1077, 1085 (11th Cir.1990), *citing Joslin Dry Goods Co. v. EEOC,* 483 F.2d 178, 183–84 (10th Cir.1973).

■ Accordingly, Judge Pisano did not err when he limited the scope of plaintiffs' requests for information regarding the formation of PCSC. Defendants have provided what this Court finds to be sufficient information on this subject. Nor does this Court agree with plaintiffs that they have an unlimited "right to explore whether various tactics were employed by MECA to affect the profitability of [PCSC]."[11]

■ Although Judge Pisano does not appear specifically to have addressed the appropriate time period for discovery, both plaintiffs and defendants address it in their written submissions on this appeal; the Court will therefore resolve the question. Defendants have proposed a time frame beginning two years before the date plaintiffs received their termination notices and ending two years after that date. Plaintiffs argue that they are entitled to discovery from the inception of PCSC as a division, which occurred over four years before the RIF took effect. In *Finch v. Hercules Inc.,* 149 F.R.D. 60, 65 (D.Del.1993), the Court held that a time limitation of two years prior to the alleged discriminatory action was appropriate on similar facts, finding:

If plaintiff can show a trend of age discrimination in the two years prior to his own dismissal, a similar showing for the four previous years will not add to the evidence. On the other hand, if plaintiff can only show a pattern of discrimination between 1985 and 1989, but not 1989 to 1991, any weak inference that plaintiff was discriminated against in 1991 does not warrant subjecting defendant to the necessity of searching its records for the period 1985 to 1989.

*See also Robbins v. Camden City Board of Educ.,* 105 F.R.D. 49, 63 (D.N.J.1985) (appropriate time period for discovery was entire duration of discrimination plaintiff's employment plus two years after termination). This Court finds that the four-year period—two years before plaintiffs' termination notices and two years after—to which defendants have agreed is appropriate under the circumstances of this case.

Plaintiffs assert that the detailed MECA-wide financial information they have demanded is necessary to prove that defendants' justification for the RIF was a mere pretext. At oral argument before Judge Pisano, plaintiffs' counsel explained that plaintiffs believe that defendants' asserted expectation of a business downturn was pretextual, and that the financial information they sought was "to verify whether or not in fact that business down turn did occur." (Op. p. 5) They contend that their expert requires company-wide information on the theory that:

Even on the face of statements made by [PCSC] to its employees that [PCSC] was 'among the lowest performing of the MECA Sales Companies,' discovery of information about MECA and its other companies is required. As [PCSC] was being compared to other MECA 'companies' and obviously as [PCSC] was not the lowest producing MECA 'company,' this is reasonably calculated to lead to admissible evidence that the RIF was pretextual.

(App.Br. pp. 29–30)

■ This argument fails for two reasons. First, and most importantly, proof that defendants misjudged PCSC's future profitability would not suffice to prove discriminatory motives. *See Maidenbaum v. Bally's Park Place, Inc.,* 870 F.Supp. 1254, 1265–66 (D.N.J.1994), *aff'd,* 67 F.3d 291 (3d Cir.1995) (defendant's summary judgment motion cannot be defeated by mere "dispute concerning the factual premises underlying the employ-

---

11. It is on this basis that plaintiffs have attempted to justify their requests for items such as the odometer readings on each motor vehicle MECA has owned. Plaintiffs explain that their expert will use this information to determine whether MECA has manipulated asset values in its accounting practices among its various divisions.

Again, plaintiffs' theory that defendants engaged in a grand scheme to operate their business in such a way as to disguise discriminatory motives for terminating several dozen of their hundreds of employees is, on the present record, entirely speculative and cannot justify such sweeping discovery requests.

er's termination decision," and fact that defendant chose some cost-cutting measures and not others provided no basis, in and of itself, to infer age discrimination). Moreover, the information plaintiffs seek is overbroad even for the purposes for which they request it. This Court can see no conceivable relevance to this case of the minutiae plaintiffs have demanded regarding every piece of MECA's real property, every motor vehicle the company owns, its purchases and sales of assets or its patents and trademarks.

Plaintiffs justify their broad requests for MECA-wide personnel information, including information related to prior charges of discrimination by MECA, on the ground that PCSC was a "mere facade" for MECA and that it was MECA, and not PSCS, that initiated and orchestrated the RIF. (Appeal.Br. p. 22) They claim that Judge Pisano has essentially eviscerated their disparate impact claim by refusing to allow them access to the statistical information they need to prove it. (Appeal.Br. p. 29)

■ As defendants point out, it is not clear that disparate impact is a viable claim under the ADEA; however, this Court need not decide that question. Statistical evidence is relevant under either a disparate treatment or a disparate impact theory. *See Robbins*, 105 F.R.D. at 55–56 (citing cases); *Finch*, 149 F.R.D. at 63 (citing cases). Under either theory, however, the information "must be limited in scope in accordance with Fed.R.Civ.P. 26(b)(1) and tied to the allegations of plaintiff's complaint." *Robbins*, 105 F.R.D. at 59, *citing Mazus v. Department of Transportation, Com. of Pa.*, 629 F.2d 870, 875 (3d Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981).

■ The "most natural focus is upon the source of the complained of discrimination— the employing unit or work unit." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084 (11th Cir.1990) (citation omitted); *see also Finch*, 149 F.R.D. at 64 (citing *Earley*); *Robbins*, 105 F.R.D. at 59 (rejecting interrogatories as "overbroad" because they contained "no limitations as to time, job category, and type of practice at issue"). The *Earley* Court held: "Where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit." *Id.* (citation omitted). Here, Judge Pisano found that the employment decisions which affected plaintiffs were made almost entirely within the PSCS unit; he therefore appropriately limited many of plaintiffs' interrogatories to that unit.

The precise legal relationship between PCSC and MECA is irrelevant to the question of the appropriate employing unit to examine for discovery purposes; in *Earley* the Court limited discovery to the specific plant that terminated the plaintiff, even though his termination was part of a larger, nationwide RIF, after finding that each plant had been given "considerable autonomy in drawing up its own RIF master plan." *Id.* The autonomy, or lack thereof, which each individual plant might have exercised for purposes other than the implementation of the RIF was simply not an issue in *Earley*, nor should it be in this case. Plaintiffs have not denied that they all worked within a discrete unit of the company known as PCSC. Indeed, they named PCSC as a defendant both in this action and in their EEOC charges. Nor have they contested, in any meaningful way, defendants' assertion that it was other employees within the PCSC unit who initiated and implemented the RIF.

The fact that MECA exercised limited approval or supervisory authority over PCSC's implementation of the RIF is not critical, either. In *Finch*, 149 F.R.D. at 64, the Court held on similar facts that:

> [t]he existence of a body outside the plaintiff's work unit which had approval power over his termination precludes a limitation of discovery to the individual work unit. However, this conclusion does not justify extending discovery beyond information which pertains to the [reviewing] Committee or the local work unit. The only discovery outside the local work unit which is relevant to plaintiff's claim is the discovery pertaining directly to the activities of the Committee which performed its function nationwide.

Judge Pisano did not strictly limit plaintiffs' discovery regarding MECA personnel practices to the PCSC division; he allowed—and

defendants assert that they have turned over—numerous categories of information regarding MECA employment policies. (*See* Appeal Opp.Br. p. 5) Thus, Judge Pisano did not simply accept defendants' assertion that PCSC is a discrete unit at face value. *Cf. Chambers v. Capital Cities/ABC*, 154 F.R.D. 63, 64 (S.D.N.Y.1994). This Court finds that Judge Pisano struck the appropriate balance on an employment discrimination claim involving an employer with nationwide operations by largely limiting discovery to the affected employment unit but requiring defendants to search more broadly for certain directly relevant information.

Defendants have provided information on MECA-wide employment and personnel policies that might have impacted upon the RIF. They have supplied detailed information regarding the persons involved in implementing the RIF. They have provided data on all PCSC employees from 1992 through 1995, and have supplied further information on the employees who held jobs at PCSC on the date the RIF was announced as well as those 99 employees who were initially affected by it. (Appeal Opp.Br. pp. 6, 9–10) Plaintiffs have at this time demonstrated no entitlement to any further information regarding defendants' personnel practices or policies. *Cf. Robbins,* 105 F.R.D. at 63 (plaintiffs entitled to district-wide rather than merely facility-wide discovery where defendants made no showing that decisions were made at facility level, nor did defendants demonstrate hardship of complying with district-wide requests).

■ Judge Pisano resolved plaintiffs' requests for information regarding prior discrimination complaints by limiting the request to administrative charges and complaints filed by PCSC employees between 1992 and 1995. This was clearly not an abuse of discretion. *See Robbins,* 105 F.R.D. at 58 (interrogatories seeking information regarding prior discrimination charges against defendant properly limited as to time, type of action or discrimination complained of, or job category).

A final note on plaintiffs' appeal is necessary. At various points in their written submissions, plaintiffs express uncertainty as to whether or not Judge Pisano meant to compel answers to interrogatories whose substance he did not address in detail. Judge Pisano specifically stated that, as to the interrogatories whose scope he did not directly address, defendants are to respond in accordance with the Federal Rules of Civil Procedure. (Op. p. 15) Any quarrel plaintiffs have with the adequacy of defendants' responses under this standard should be the subject of a separate motion.

For the foregoing reasons, the Court will affirm Magistrate Judge Pisano's decision in all respects.

### CROSS–MOTIONS FOR SANCTIONS

■ Both plaintiffs and defendants have renewed the motions for sanctions that they advanced before Judge Pisano. Judge Pisano denied both motions without prejudice but noted, "[I]f I have continued discovery disputes of this nature I will exercise my authority and order that sanctions be paid." (Op. p. 16) This Court does not find that Judge Pisano's decision constituted an abuse of his broad discretion to deny or order sanctions for discovery abuses. Nor, after close consideration, does the Court find sanctions to be warranted on this appeal. Although the Court finds that Judge Pisano's ruling was entirely correct, and that plaintiffs have not even approached the abuse of discretion standard required for a reversal of his order, plaintiffs acted within their rights in seeking the Court's review of the Magistrate's decision. Accordingly this Court will deny, without prejudice, all parties' motions for sanctions under Federal Rule of Civil Procedure 37.

### CONCLUSION

For the foregoing reasons, the Court will deny without prejudice plaintiffs' motions to proceed as a collective action and for certification of a class under Federal Rule of Civil Procedure 23 but grant plaintiffs' motion to amend the complaint. The Court will affirm the April 22, 1996 decision of Magistrate Judge Joel A. Pisano restricting the scope of plaintiffs' interrogatories, and the Court will deny without prejudice all parties' motions for sanctions under Federal Rule of Civil

Procedure 37. An appropriate order is attached.

## ORDER

This matter having come before the Court upon the following motions: (1) plaintiffs' motions to proceed as a collective action, for limited certification as a class action, and to amend the complaint; (2) plaintiffs' subsequent appeal of the order of Magistrate Judge Joel A. Pisano which struck and/or limited the scope of certain interrogatories plaintiffs had served upon defendants; and (3) plaintiffs' motion and defendants' cross-motion for sanctions; and the Court having considered these matters upon the parties' written submissions pursuant to Federal Rule of Civil Procedure 78; and good cause having been shown;

IT IS ON THIS 12th day of August, 1996;

ORDERED that plaintiff's motions to proceed as a collective action and for certification of a class under Federal Rule of Civil Procedure 23 is hereby denied; and it is further

ORDERED that the parties' cross-motions for sanctions are hereby denied; and it is further

ORDERED that the Order of Magistrate Judge Joel A. Pisano is hereby affirmed in all respects, and it is further

ORDERED that plaintiffs' motion to amend the complaint is hereby granted.